**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Joe GREENBERG, Defendant.**

United States District Court
S. D. New York.

Jan. 12, 1965.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for plaintiff, James G. Greilsheimer, Sp. Asst. U. S. Atty., of counsel.

Harry Rosenblatt, New York City, for defendant.

FEINBERG, District Judge.

Plaintiff United States seeks to recover from defendant Joe Greenberg penalties provided by the False Claims Act, 31 U.S.C. §§ 231–235. This suit arises out of three construction contracts which Greenberg, as general contractor, entered into with the United States Navy, calling for construction of certain facilities on Navy property.[1] The government alleges that Greenberg, to obtain approval and payment by the United States of moneys due under these contracts, caused to be made and presented to the government thirty-four payroll reports which falsely certified that the wages set forth in them were correct and which contained on the reverse side an affidavit to the same effect. There is no serious dispute that the wages certified to in these reports were higher than

---

1. The contracts were with the Bureau of Yards and Docks of the Department of the Navy and were identified as NOy–85012, NOy–86274 and NOy–86279.

the wages actually paid[2] and that the Navy made payments to Greenberg under all three contracts.[3]

The government urges that the submission of these payroll reports constituted false claims against the United States, subjecting defendant Greenberg to statutory liability under 31 U.S.C. § 231. That section provides, in part, as follows:

"Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false * * * affidavit * * * knowing the same to contain any fraudulent or fictitious statement or entry * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act * *."

The government contends that defendant Greenberg violated both clauses of section 231.

As part of its direct case, the government introduced the 1958 criminal conviction of Greenberg in this court for violating 18 U.S.C. §§ 2, 1001. Defendant was convicted after a jury trial on thirty-four counts of aiding and abetting two subcontractors in making false statements to the government to the effect that they paid their workers the wage rates required by the contracts and the

Davis-Bacon Act. The conviction was affirmed in United States v. Greenberg, 268 F.2d 120 (2d Cir. 1959). The false statements in question were contained in the identical payroll reports upon which this action is based: twelve payrolls certified by subcontractor Robert D'Agostino under contract NOy–85012, eighteen payrolls certified by D'Agostino under contract NOy–86279, one payroll certified by D'Agostino under contract NOy–86274, and three payrolls certified by subcontractor Arthur L. Peterson under contract NOy–86274.

In this civil action, defendant challenges the right of the government to employ the criminal conviction in any manner. In Local 167, International Brotherhood of Teamsters, etc. v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804 (1934), the Supreme Court found that "the judgment [after trial] in the criminal [conspiracy] case conclusively established in favor of the United States and against those who were found guilty that within the period covered by the indictment the latter were parties to the conspiracy charged." Id. at 298, 54 S.Ct. at 399. The complaint in the civil action in that case, as here, included the allegations on which the criminal prosecution was based. The Court held that "the defendants in this suit [for an injunction] who had been there convicted could not require proof of what had been duly adjudged between the parties." Ibid. This principle was reaffirmed by the Supreme Court in Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568–569, 71 S.Ct. 408, 95 L.Ed. 534 (1951), where the Court said:

"It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding. * * * In the case of a criminal conviction based on a jury verdict

---

2. The wages set forth in the reports were the same as those set by the Secretary of Labor pursuant to the Davis-Bacon Act, 46 Stat. 1494 (1931), 40 U.S.C. §§ 276a to 276a–7, to which these contracts were subject.

3. Plaintiff's Proposed Findings of Fact, para. 15, agreed to by defendant. Transcript [hereinafter cited as "Tr."], pp. 212–13.

of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment."

■■ Thus, plaintiff here may rely upon the prior judgment of conviction of defendant after trial to establish the issues relevant to this case which were necessarily determined by the conviction. The conviction necessarily decided that Greenberg aided and abetted in the preparation of the thirty-four payroll reports referred to above, which falsely represented that certain wages were being paid to employees when, in fact, actual wages paid were lower. Therefore, I find these facts to be established. Even if the conviction could not be so used, there is sufficient evidence in the record to find as I do that Greenberg helped in the preparation and made or caused to be made these thirty-four reports[4] and that the reports were false in the respects stated above.

In addition to contesting use of the prior conviction in this proceeding, defendant claims that it is entitled to judgment nonetheless, principally because the government has not proved that each payroll report was "a claim upon or against the Government" and that Greenberg caused such reports to be presented to the government. Defendant has other claims, as well, which will be dealt with later.

Greenberg, as general contractor, was not paid for any work until he submitted a voucher for payment. It was stipulated that progress payments are not made on vouchers presented by the general contractor relating to the amount of work completed until payroll reports are received.[5] Defendant argues that since the voucher, and not the payroll reports, contains the request for payment, then, assuming arguendo the falsity and submission of the payroll reports, the reports do not constitute claims against the

government. In short, defendant urges that unless the false statement is contained in the voucher request for payment, there is no false claim within the meaning of the Act.

■ Not all false statements made to the federal government are claims within the meaning of the False Claims Act. E.g., United States v. Howell, 318 F.2d 162 (9th Cir. 1963). In United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed 2d 1001 (1958), the Supreme Court held that the mere submission of a false application to a credit institution which, in turn, procured F.H.A. insurance of the loan did not constitute a false claim against the government. The Court stated: "[T]he conception of a claim against the government normally connotes a demand for money or for some transfer of public property." Id. at 599, 78 S.Ct. at 952.[6] The Court expressly left open the question whether the result would be different if there were a default on the loan and a demand upon the government as guarantor. Id. at 599, n. 6, 78 S.Ct. 950. Shortly thereafter, this question came before the Court of Appeals for the Third Circuit in United States v. Veneziale, 268 F.2d 504 (3d Cir. 1959), where the government had been required to pay under its guaranty induced by a fraudulent application for a bank loan. The application was fraudulent because it contained the false statement that the loan applicants wanted the money for home improvements when in fact they intended to use it to buy real property from defendant Veneziale. The court held that there was a false claim within the meaning of the False Claims Act and that defendant Veneziale was liable thereunder. See also Fleming v. United States, 336 F.2d 475 (10th Cir. 1964), petition for cert. filed, 33 U.S.L.WEEK 3209 (U.S. Dec. 8, 1964) (No. 728); United States v. Cherokee Implement Co., 216 F.Supp. 374 (N.D.Iowa 1963).

---

4. Tr. pp. 39–40, 78–79, 81–83, 100–03.

5. Tr. pp. 8–9.

6. The language was a quotation from United States v. Tieger, 234 F.2d 589, 591 (3d Cir.), cert. denied, 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237 (1956).

The important facts in this case are similar to those in United States v. Veneziale, supra. In Veneziale, there was a false statement (a loan application to a bank) which by itself would not constitute a false claim against the government. This fraudulent application became one of the essential documents which induced the Federal Housing Administration to guaranty payment of the bank loan eventually causing the government to pay money out of the Treasury. In Veneziale, the court said:

> "Here it is clear that the fraudulent statement in the loan application * * * was an essential inducement to the Federal Housing Administration guaranty upon which the government has now had to pay. Thus the wrong of the defendant was an important, even an essential factor in subjecting the government to an enforceable demand for money."

United States v. Veneziale, supra, 268 F.2d at 505; cf. United States ex rel. Marcus v. Hess, 317 U.S. 537, 542–544, 63 S.Ct. 379, 87 L.Ed. 443 (1943). In this case, the facts leading to a determination that the false payroll reports are claims are even stronger. Defendant knew that the payroll reports were an essential element in subjecting the government to a demand for money and defendant himself filed the vouchers upon which the payments were made to him.[7] For other holdings that the submission of false payrolls is within the purview of the False Claims Act, see United States v. Annicciarico, 238 F.Supp. 339 (D.N.J.1963); United States v. Hochstein, Civil No. 1273 (S.D.Fla.1963); United States v. Hochstein, Civil No. 1236 (S.D.Fla.1962); United States v. Sanders, 194 F.Supp. 955 (E.D.Ark. 1961). Cf. United States v. Ueber, 299 F.2d 310 (6th Cir. 1962).

■ That there was submission to the Navy of false payroll reports is not seriously contested, but the question of who submitted them is in dispute. Peterson testified that he turned over three payroll reports on one job to Greenberg.[8] D'Agostino, Greenberg's main subcontractor on all three jobs, testified that he handed over to Greenberg all but ten of the thirty-one payroll reports certified to by himself and, as to those ten, he turned them over to Inspector De Ronde pursuant to Greenberg's instructions.[9] D'Agostino further testified that he witnessed the submission by Greenberg of some payroll reports to a Navy inspector.[10] Theodore Savath, a Navy labor relations specialist, assigned since 1954 to the New York district office of the Bureau of Yards and Docks, testified that his letter to the prime contractor tells him to submit the payroll reports [11] and that submission by the prime contractor is the usual procedure. Finally, the contracts themselves provide that the prime contractor will be responsible for the submission of certified copies of the payrolls of all subcontractors. The evidence is sufficiently clear and convincing to persuade me that the thirty-four false payroll reports, all of which were actually presented to an agent of the United States government, were presented by Greenberg personally or caused to be presented at his discretion, that Greenberg caused the payroll reports to be made falsely, that Greenberg caused to be made and presented to the Department of the Navy thirty-four false claims, knowing such claims to be false, in order to obtain payment on such claims, and that he used thirty-four false affidavits, knowing them to be fraudulent, for the same purpose.

■ Defendant's numerous other contentions do not require extended comment. At trial, defendant for the first time raised the defense that the False Claims Act violates due process because there is no rational relationship between the actual or possible damages to the

7. Tr. pp. 95, 157–58, 191–92.

8. Tr. pp. 41–45.

9. Tr. pp. 79, 88, 93–95.

10. Tr. pp. 81–82.

11. Tr. pp. 209–10

government and the statutory penalty of $2,000 for each false claim and double the amount of actual damages. Subsequent to trial, defendant added the additional constitutional argument that the False Claims Act is unconstitutional because it places defendant in double jeopardy. These contentions of unconstitutionality are without merit. United States ex rel. Marcus v. Hess, 317 U.S. 537, 548–552, 63 S.Ct. 379 (1943); Toepleman v. United States, 263 F.2d 697 (4th Cir. 1959).[12]

■ Defendant also urges that the complaint was not proved in accordance with its allegations and that plaintiff's cause of action must, therefore, fail. Apparently, defendant is referring to an allegation in paragraph 10 of the complaint that defendant "paid or caused to be paid" wages at rates lower than those stated in the payroll reports. This allegation is pure surplusage, since it is not necessary for the United States to prove that defendant caused the improper wages to be paid.

Defendant also argues that plaintiff's claim in this case is barred as a result of the settlement of a prior action brought in this court by Greenberg against the United States.[13] Greenberg's complaint in this prior action contained four causes of action for breach of contract, seeking recovery of amounts due on four separate contracts, two of which are involved in this case.[14] In that action, the government counterclaimed in November 1958 for the sums it had withheld from Greenberg. However, its counterclaim did not include a cause of action under the False Claims Act. The instant action by the United States under the False Claims Act was commenced on April 21, 1961. On May 8, 1961, Greenberg filed his answer in this action. On November 14, 1961, the second, third and fourth causes of Greenberg's prior action and the government's counterclaim were dismissed by stipulation with prejudice. On March 6, 1962, the remaining cause of action in Greenberg's prior action was settled for the sum of $750. From all of this, Greenberg argues that the government has released its right to bring any other claim against Greenberg. Defendant also argues that Rule 13(a), Fed.R.Civ.P. required the United States to assert in the prior action the claims now brought in this action, because they were "compulsory" counterclaims.

■■ As to the first contention, there is nothing in the records of Greenberg's prior action (including the stipulations of settlement) to justify a finding that the parties intended at that time to dispose of the then pending government claim in this suit. The compulsory counterclaim argument must also be rejected. Assuming arguendo that the claim of the United States under the False Claims Act was a compulsory counterclaim within the meaning of Fed.R.Civ.P. 13(a) and, therefore, should have been asserted as part of the government's counterclaim to Greenberg's prior action, foreclosing that claim now would be unnecessarily harsh. Greenberg never advanced the argument based upon Fed.R.Civ.P. 13 at any time prior to or at trial in this case and urged it for the first time in the post trial memorandum. Had Greenberg raised that defense in his answer in this suit or prior thereto by motion, the government could have moved to amend its answer in the then pending prior action to assert the allegedly compulsory counterclaim for violations of the False Claims Act. Under Fed.R. Civ.P. 13(f), it is likely that such a mo-

12. It is, therefore, unnecessary to decide whether at this late stage of the proceedings defendant may amend his answer to assert either or both of these defenses. See Tr. p. 2.

13. Joe Greenberg v. United States of America, Civil No. 131–299 (S.D.N.Y. 1958).

14. Contracts NOy–86274 and NOy–86279 were involved in both the former action and this action. Contract NOy–85012, which is involved in this case, was not the subject of suit in the former action.

tion by the government would have been granted. Alternatively, the government could have moved to consolidate both the prior action and this action pursuant to Fed.R.Civ.P. 42(a). Because of Greenberg's delay in making the argument he now advances, the government has been trapped, however unintentionally, into a position where it can do neither. Accordingly, under the circumstances, I hold that the defense based upon the compulsory counterclaim argument has been waived. If Greenberg's argument be interpreted as a motion to amend his answer in this action to assert this defense, under the circumstances set forth above the motion will be denied in the exercise of the court's discretion.

Other arguments relied upon by defendant at or prior to trial were apparently not pressed in his post trial memorandum but, in any event, are equally without merit.

■■■ Having determined defendant's liability for violation of the False Claims Act, the remaining issue is the amount of plaintiff's award. The government originally sought the statutory forfeiture of $2,000 for each of the thirty-four false claims. However, in its post trial memorandum, it states that because the Department of Justice adopted a new policy after the date when the complaint was originally filed, it merely seeks "as many forfeitures as the court in its discretion deems proper." [15] The government suggests, as alternative approaches, thirty-four forfeitures on the basis of thirty-four false payrolls,[16] eight forfeitures on the basis of eight dates of certifications of the thirty-four payrolls,[17] and three forfeitures based on the three contracts involved in this action.[18] In view of the government's position that the number of forfeitures is within the discretion of the court, the prior settlement of the action brought by Greenberg against the government, the fact that Greenberg has already been convicted in a criminal prosecution, and the concession of the government that it has not proved in this action any actual out-of-pocket damages and does not assert them, only three forfeitures will be declared, one under each contract. This action by the court should not be construed as necessarily approving this approach in any other action where any of the foregoing circumstances—including the government's position—might be different.

Accordingly, plaintiff is entitled to a judgment of $6,000 against defendant, together with costs. The foregoing incorporates the findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P. Submit judgment accordingly.

---

15. Plaintiff's Post Trial Memorandum of Law, p. 13.

16. This was the result in Sanders, supra, and the two Hochstein cases, supra.

17. The government suggests support for this view is found in Faulk v. United States, 198 F.2d 169 (5th Cir. 1952); United States v. Grannis, 172 F.2d 507, 515 (4th Cir.), cert. denied, 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727 (1949); United States v. American Precision Products Corp., 115 F.Supp. 823 (D.N.J. 1953).

18. See United States ex rel. Marcus v. Hess, 41 F.Supp. 197, 216 (W.D.Pa. 1941), rev'd, 127 F.2d 233 (3d Cir. 1942), rev'd, 317 U.S. 537, 552, 63 S.Ct. 379, 87 L.Ed. 443 (1943); United States v. Rohleder, 157 F.2d 126, 131 (3d Cir. 1946).