DIVERSIFIED MORTGAGE INVESTORS *vs.* VIKING GENERAL
CORPORATION.

Suffolk.   April 20, 1983. — June 2, 1983.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Law of the Case.  Pleading, Civil,* Counterclaim, Amendment.  *Practice,
Civil,* Counterclaim.  *Guaranty.  Judgment,* Preclusive effect.

In an action against a corporation on a guaranty, the defendant, which
    had guaranteed payment of principal and interest on a loan given by
    the plaintiff to the defendant's wholly-owned subsidiary, and which
    had consented to the treatment of the guaranty as separate from the
    subsidiary's note and to being sued in Massachusetts on the guaranty,
    could not successfully contend that recovery was barred by reason of
    the plaintiff's failure to assert the defendant's liability on the guaranty
    as a compulsory counterclaim in a Florida foreclosure proceeding
    against the subsidiary in which the plaintiff had been joined, where it
    appeared that the defendant's consents had been a principal induce-
    ment to the making of the loan, that the defendant had failed to object
    promptly to the Massachusetts action, and that, in the circumstances,
    it would be a miscarriage of justice to bar recovery in Massachusetts
    simply because the Florida action had been the first to be reduced to
    judgment.  [147-151]
Where a judge allowed the plaintiff's motion for summary judgment in an
    action on a guaranty, following denial by two different judges of the
    defendant's respective motions for leave to amend or supplement its
    pleadings in order to allege that the claim was barred by reason of the
    plaintiff's failure to raise it as a counterclaim in a Florida proceeding,
    the judge, in effect, properly exercised whatever discretion he pos-
    sessed under "law of the case" principles.  [151-152]


CIVIL ACTION commenced in the Superior Court on
January 8, 1976.

Motions for summary judgment were heard by *Lynch*, J.,
and the case was reported by him.

*Joel A. Kozol (Roland E. Shaine* with him) for the de-
fendant.

*Peter M. Saparoff (Joan D. Channick* with him) for the plaintiff.

CUTTER, J.  The plaintiff (DMI) seeks to recover from the defendant (Viking) some $644,400 (plus interest) upon an unusually broad guaranty by it, dated December 21, 1973, of payment of the principal and interest on a note of Viking Mobile Homes, Inc. (Mobile).  DMI is a Massachusetts business trust.  Viking, the guarantor, is a Florida corporation, of which Mobile is a wholly owned subsidiary.

Mobile owned land in Florida.  As part of a loan transaction in December, 1973, Mobile delivered in Massachusetts a note to DMI for $650,000, a loan agreement, a security agreement, and a third mortgage interest in the Florida land.  Over $600,000 was advanced by DMI on its loan to Mobile.  These advances remain unpaid.

On June 4, 1975, judicial foreclosure proceedings were initiated in a Florida Circuit Court by the holder of the first mortgage of Mobile's Florida land.  In 1975, Mobile defaulted in making interest payments on its note to DMI. As the consequence of Mobile's defaults, two pieces of litigation thus have been conducted, (a) the first mortgage foreclosure proceeding in Florida and (b) this action in Massachusetts by DMI on Viking's guaranty.

A.  *The Florida First Mortgage Foreclosure.*

In the Florida first mortgage foreclosure proceedings, DMI (as third mortgagee), Mobile (as owner), and Viking, the guarantor (as an "interest holder"), were joined as parties.  Viking filed a cross claim against DMI which alleged failure by DMI to advance funds to Mobile to make payments on the first mortgage which Viking contended were required by the 1973 agreement, a loan commitment, and the mortgage.  DMI's original answer to Viking's Florida cross claim did not assert any counterclaims against Viking. In the Florida proceedings, indeed, no counterclaim based *on the guaranty* was ever asserted by DMI against Viking. DMI, however, did amend its answer on February 11, 1976, to add a counterclaim against Mobile on the note,[1] but by

---

[1] The Florida trial court initially on June 4, 1976, found for DMI against Mobile on the note but awarded to Viking, the guarantor, and to

then the Massachusetts action against Viking on its guaranty (not litigated in Massachusetts until 1980 or 1981 and never litigated in Florida) had been initiated.

After completion of the Florida proceedings summarized in n.1, a so called final judgment was entered on April 14, 1981, in favor of DMI against Mobile on the note in the sum of $759,558.99 plus interest at six percent (reserving jurisdiction with regard to costs).[2] This Florida judgment makes no mention of either Viking, the guarantor, or its guaranty.

B. *The Massachusetts Action on the Guaranty.*

On January 8, 1976, DMI filed in the Superior Court a complaint against Viking, the guarantor, alleging the execution of the note by Mobile in Boston on December 21, 1973 (together with the other instruments already mentioned as then executed). The complaint then alleged (a) the execution of the guaranty by Viking in Massachusetts (see Appendix 1, *infra*); (b) the advances made by DMI to Mobile based on the note; and (c) Mobile's subsequent default. Viking filed its answer on March 2, 1976. The

---

Mobile a substantially larger sum on the cross claim against DMI. On October 28, 1977, this judgment was reversed on appeal. *Diversified Mortgage Investors* v. *Viking Gen. Corp.*, 351 So. 2d 734 (Fla. Dist. Ct. App. 1977). Mobile did not appeal the judgment for DMI against it on the note, so that the net result of the appeal was to establish a liability of Mobile to DMI on the note and a determination in favor of DMI on Viking's cross claim. Judgment accordingly was entered on October 23, 1978, in the Florida Circuit Court. After revision (on June 13, 1979) of the judgment of October 23, 1978, in the Florida Circuit Court, that 1979 revised judgment itself was vacated by the Florida Second District Court of Appeal by opinion dated July 29, 1980, and the order for judgment of October 23, 1978, was ordered reinstated. After further proceedings in the Florida courts which need not be stated in detail, the Supreme Court of Florida declined on February 12, 1981, further review of the decisions of the intermediate appellate court.

[2] Mobile's note required the payment by Mobile and its successors in interest of court costs and attorneys' fees. The guaranty extends to all sums due by reason of the note and loan documents. See *New England Merchs. Natl. Bank* v. *Hoss*, 356 Mass. 331, 335-336 (1969). The full amount due on the guaranty thus cannot be determined finally until all the litigation, both in Massachusetts and Florida, is completed.

Massachusetts action against Viking on the guaranty was brought after the initiation (on June 4, 1975) of the Florida judicial first mortgage foreclosure proceeding, but (as already stated) before the filing (on February 11, 1976) of DMI's amended answer in the Florida proceedings.

On April 15, 1980, DMI filed in the Massachusetts action a motion for summary judgment as to liability only, based upon the Florida judgment entered on October 23, 1978. On June 18, 1980, Viking moved to amend its answer (of March 2, 1976) in the Massachusetts proceedings to aver (essentially as a defense) that in the Florida foreclosure litigation Viking, the guarantor, had "made a cross claim against" DMI, alleging that DMI had committed a breach of "its obligation to fund certain future advances under the terms of the transaction which included, as an integral part, the guaranty" and that DMI, in response to the cross claim, "made a counterclaim but failed to state therein a claim on . . . [Viking's] guaranty." After hearing, this motion was denied on July 2, 1980, by one Superior Court judge. On July 10, 1980, Viking sought leave, pursuant to Mass.R.Civ. P. 15(d), 365 Mass. 762 (1974), to supplement its answer in much the same form as the amendment sought by it on June 18, 1980. This leave was denied on July 29, 1980, by another Superior Court judge. The denials were each without statement of reasons. Of course, no such statement was required.

Viking on March 25, 1981, filed in this action a motion for summary judgment, supported by an affidavit concerning the Florida proceedings and later by a copy of a document dated April 14, 1981, entitled "Final Judgment in Accordance with the Mandate of the Second District Court of Appeal," which (as already stated) made no mention of Viking or its guaranty. DMI thereupon moved to strike Viking's motion for summary judgment. That motion was denied by a third Superior Court judge. The cross motions for summary judgment were referred to a master who filed a report and recommendation for the guidance of a fourth Superior Court judge (hereafter the motion judge). The

master recommended that summary judgment be entered for DMI on the guaranty, even though, as he viewed the law of Florida, DMI should have raised in the Florida Circuit Court its claim against Viking on the guaranty as a compulsory counterclaim. Fla.R.Civ.P. 1.170(a), Fla. Stat. Ann. (West 1967). The master felt also that no special language of the guaranty prevented "the application of the compulsory counterclaim rule of law." Instead, he took the position that "the earlier decisions of the two Superior Court [j]ustices who independently refused to accept . . . [Viking's] amendment [and supplement] to its answer . . . [raising] for the first time its claim of compulsory counterclaim" had become the "law of the case." For this view he referred to *Saporita* v. *Litner*, 371 Mass. 607, 620 (1976), and Mr. Justice Lummus's article, The "Law of the Case" in Massachusetts, 9 B.U.L. Rev. 225, 230-231 (1929). Compare *Peterson* v. *Hopson*, 306 Mass. 597, 601-605 (1940). The master did not regard the filing (on April 28, 1981) of the Florida judgment (dated April 14, 1981) in the Superior Court as a sufficient "change of circumstances" to require disregard of the prior action of two Superior Court judges (who, in effect, did not accept DMI's failure to assert the guaranty in the Florida proceeding as precluding relief to DMI in Massachusetts on Viking's guaranty).

The motion judge ordered summary judgment for DMI and denied Viking's motion for summary judgment, without comment on the master's recommendation, and also (after receiving a brief from Viking's counsel and after hearing) denied reconsideration of his order. He then (see G. L. c. 231, § 111, and Mass.R.Civ.P. 64, 365 Mass. 831 [1974]) reported to this court the issue whether he correctly had allowed DMI's motion for summary judgment and denied Viking's similar motion.

Viking now contends that, because DMI failed to assert Viking's liability on the guaranty as a counterclaim against Viking's cross claim in the Florida foreclosure proceeding, the Florida judgment wholly bars DMI from enforcing the guaranty in Massachusetts. Viking's position, if supported,

is that DMI has a valid Florida judgment against Mobile, the maker of the guaranteed note, for $759,558.99 plus interest, which (so far as is shown by this record) may well be worthless, but has no claim in Massachusetts on Viking's comprehensive guaranty, on which a Massachusetts action was brought long prior to any enforceable judgment against Mobile in Florida.

1. A principal inducement to DMI to make the loan to Mobile must have been the overriding guaranty in which (among other special agreements) Viking consented to enforcement of the guaranty in Massachusetts and appointed the Secretary of the Commonwealth its agent to receive service of process. The consent to be sued in Massachusetts was, of course, in part a submission in advance by Viking, as a Florida corporation, to the jurisdiction of any Massachusetts court. It also may be viewed reasonably as a forum selection agreement to have the guaranty enforced in Massachusetts (see Appendix 1, at [F], [G], and [H]) as an independent obligation (see Appendix 1, at [C]), rather than in a distant jurisdiction by courts in which DMI could litigate much less conveniently.[3] To sustain Viking's position (which wholly disregards equitable considerations) inevitably would have the unjust effect of causing DMI to lose a principal assurance'of payment, a result not lightly to be adopted.

---

[3] DMI had a reasonable interest (see 6 Wright & Miller, Federal Practice and Procedure § 1409, at 38 [1971]) in not being forced "to litigate every one of . . . [its] claims . . . in a forum chosen and at a time dictated by" Viking. Here, even if the parties have not selected Massachusetts as the exclusive forum in which to litigate the guaranty, Viking at least has consented to its being litigated here, and DMI may well have regarded it as the agreed forum. See Restatement (Second) of Conflict of Laws, § 80 (1969 & app. 1980 & Supp. 1982) and the comprehensive citation of authorities in Chief Justice Burger's opinion in *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 3-20 (1972). See also Restatement (Revised) of the Foreign Relations Law of the United States § 492(2)(f) and comment h (Tent. Draft No. 4, 1983); *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 510-521 (1974).

The preclusive effect[4] of a judgment has been considered recently in Restatement (Second) of Judgments §§ 22-26 (1980). This revision gives full consideration to procedural rules similar to Mass.R.Civ.P. 13(a), 365 Mass. 758 (1974) and the cognate Florida rule 1.170(a). The Restatement provisions most pertinent in the present case (set out in Appendix 2), especially § 26(1)(a), recognize that, in appropriate circumstances, a party may consent effectively to the separate litigation of related claims. As noted already, Viking has consented to treatment of the guaranty as an obligation separate from the note of its wholly owned subsidiary (Mobile) and also to being sued on it in Massachusetts. Viking's consents (in its guaranty) may be taken to have as broad a meaning as the language warrants. The Massachusetts and the Florida actions were pending at the same time, as those acting for Viking well knew. The Florida judgment established (except for costs) Mobile's liability on its note. It would be unjust in the circumstances to apply rule 13(a) and its Florida equivalent (as well as principles of res judicata) to give that judgment greater effect, as barring completion of the Massachusetts action on the independent guaranty, simply because the Florida action was the first to be reduced to final judgment. Viking also has failed (at least from January 8, 1976, to June 18, 1980) to object with promptness in the Massachusetts action to DMI's decision to sue in the Commonwealth. Compare *Commonwealth* v. *Andover,* 378 Mass. 370, 374-375 (1979); *United States* v. *Greenberg,* 237 F. Supp. 439, 444-445 (S.D. N.Y. 1965). Compare also *Genesco, Inc.* v. *Koufman,* 11 Mass. App. Ct. 986, 990 (1981).

Viking's consents and conduct seem to us to justify refusal to recognize here any bar which might otherwise result from the Florida judgment, even if DMI (giving weight only

---

[4] Restatement (Second) of Conflict of Laws § 95 (1969) suggests that the preclusive effect of a judgment in another State is to be determined by reference to the law of the jurisdiction in which the judgment was rendered. See comment g & illustration 6.

to the interests of judicial economy rather than also taking into account equitable considerations) should have asserted the guaranty as a compulsory counterclaim in Florida. No decision in Massachusetts (related to rule 13) brought to our attention seems to require any different result.[5]

Because we rely primarily on Viking's consent to a separate action in Massachusetts on the independent guaranty,[6] we need not decide whether Fla.R.Civ.P. 1.170(a) required DMI to assert its claim on the guaranty against Viking as a counterclaim to Viking's Florida cross claim against DMI. In view, however, of the uncertainties about what counterclaims are compulsory, assertion of the guaranty as a counterclaim certainly would have been the cautious and prudent course for DMI to have followed. See Wright, Federal Courts § 79, at 530-531 (4th ed. 1983); 3 Moore's Federal Practice, par. 13.12[1], at 13-55 (2d ed. 1983).

Various Florida cases suggest a broad construction of its compulsory counterclaim rule. See, e.g., *Newton* v. *Mit-*

---

[5] See *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 685 n.1 (1974), where guarantors were not involved in Massachusetts proceedings and no questions at issue here were clearly presented, but see *id.* at 688-695. Compare decisions wholly or partly based on pre-1974 law: *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 367 Mass. 424, 426-431 (1975); *Osserman* v. *Jacobs*, 369 Mass. 200, 204-206 (1975); *Volpe Constr. Co.* v. *Trustees of Tufts College*, 1 Mass. App. Ct. 38, 40-41 (1973). *Cousineau* v. *Laramee*, 388 Mass. 859, 863 (1983), involves questions of claim splitting (without the consent of the defendants) only with respect to injuries and damages arising from a single automobile accident and has no relevance to suits upon a separate guaranty and upon the guaranteed obligation. No question of consent to an independent action on an independent obligation was involved in *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 448-449 (1982).

[6] The circumstance that the guaranty was in an independent instrument and not by endorsement on the note (see G. L. c. 106, § 3-416; Fla. Stat. Ann. § 673.3-416 [West 1966]) may be of significance as emphasizing the independent character of this guaranty. See *Fewox* v. *Tallahassee Bank & Trust Co.*, 249 So. 2d 55, 57-58 (Fla. Dist. Ct. App. 1971). See also *Coolidge Bank & Trust Co.* v. *First Ipswich Co.*, 11 Mass. App. Ct. 923, 924 (1981). Compare *Walter E. Heller & Co.* v. *Cox*, 343 F. Supp. 519, 525-527 (S.D. N.Y. 1972), aff'd, 486 F.2d 1398 (2d Cir.), cert. denied, 414 U.S. 827 (1973).

*chell*, 42 So. 2d 53, 54-55 (Fla. Dist. Ct. App. 1949); *Pesce* v. *Linaido*, 123 So. 2d 747, 749 (Fla. Dist. Ct. App. 1960); *Lawyers Title Ins. Corp.* v. *Little River Bank & Trust Co.*, 228 So. 2d 412, 413-415 (Fla. Dist. Ct. App. 1969). Compare *Cheezem Dev. Corp.* v. *Maddox Roof Serv., Inc.*, 362 So. 2d 99 (Fla. Dist. Ct. App. 1978). See also *Travelers Exp., Inc.* v. *Acosta*, 397 So. 2d 733, 736-738 (Fla. Dist. Ct. App. 1981). Other Florida cases may indicate some unwillingness on the part of the Florida courts to apply the full measure of the compulsory counterclaim principle in cases where the unasserted claim has at least a reasonable basis in an independent obligation of the person against whom the claim is asserted. See *Quarngesser* v. *Appliance Buyers Credit Corp.*, 187 So. 2d 662, 664 (Fla. Dist. Ct. App. 1966), treating a joint and several guaranty by two coguarantors as establishing liabilities independent of each other; *First Natl. Bank* v. *Freedman*, 244 So. 2d 183, 184-187 (Fla. Dist. Ct. App. 1971), where a judgment, obtained for interest due on a demand note, was held not to preclude a later action for the principal of that note which was due already when the first action was initiated; *Fewox* v. *Tallahassee Bank & Trust Co.*, 249 So. 2d 55, 57-58 (Fla. Dist. Ct. App. 1971), which seems to recognize in some degree the independent liability of a guarantor upon a separate guaranty. The authorities just cited leave uncertainty concerning whether a separate action on Viking's guaranty would be regarded even in Florida as within the purview of Fla.R.Civ. P. 1.170(a).[7]

Rules like Mass.R.Civ.P. 13(a) and Fla.R.Civ.P. 1.170(a) may operate harshly to deny relief to a party to a proceeding in which judgment has been entered, upon a new claim against another party to that earlier proceeding, if the new claim is regarded as a compulsory counterclaim. The

---

[7] For authorities discussing the scope of the "same transaction or occurrence" language in rule 13(a), see 6 Wright & Miller, *supra* at §§ 1409-1412, 1420 (1971 & 1982 Supp.); 3 Moore's Federal Practice, pars. 13.12-13.13 (2d ed. 1983). See also 2 *id.* par. 2.06 (2d ed. 1982 & Supp. 1982-1983); Annot., 22 A.L.R. 2d 621 (1952).

harshness has been perceived by text writers in various applications of Federal rule 13(a) and has led to some recognition that, in the administration of rules like rule 13(a), there must be reasonable flexibility in order to accomplish the fundamental purpose of combining related claims in one action in the interest of judicial economy while at the same time accomplishing a just result.[8] See 6 Wright & Miller, *supra* at §§ 1417 & 1418, particularly at 98-108 (1971 & Supp. 1982). See also *id.* § 1412; 3 Moore's Federal Practice, pars. 13.12[1]-13.14-1 (2d ed. 1983); 1B *id.* pars. 0.405[12], 0.410[1], 0.410[2] (2d ed. 1982 & Supp. 1982-1983); Smith & Zobel, Rules Practice, § 13.24 (1974 & Supp. 1981).

2. We turn now to the ground relied on by the master in the Superior Court in his recommendations. The precise limits of the principle of "law of the case" are indefinite. To the extent that the principle is relied on here, it is presumably in the sense that "a court cannot be compelled, at the will of a party, to hear anew an interlocutory matter, once decided, where no material change in the situation has occurred." See Mr. Justice Lummus's article, 9 B.U.L.Rev. at 230-231. The author there (at 231-236) comes close to treating "law of the case" as a largely discretionary doctrine, available to prevent repetitive efforts to obtain interlocutory relief on issues once decided. In *Peterson* v. *Hopson*, 306 Mass. at 599-605, also, Mr. Justice Lummus, speaking for the Supreme Judicial Court, gave this aspect of

---

[8] It must be remembered that Mass.R.Civ.P. 1, 365 Mass. 730 (1974), and Fla.R.Civ.P. 1.010, Fla. Stat. Ann. (West 1967) require that the rules "shall be construed to secure the *just*, speedy, and inexpensive determination of every action" (emphasis supplied). The Massachusetts rule, like the comparable provision of the Federal rule, has been employed on occasion to determine with flexibility the application of the rules to particular facts to avoid a miscarriage of justice. See 4 Wright & Miller, *supra* at § 1029 (1969 & Supp. 1983); 2 Moore's Federal Practice § 1.13[1] (2d ed. 1982 & Supp. 1982-83); Smith & Zobel, Rules Practice § 1.9 (1974 & Supp. 1981). See also *O'Connor* v. *City Manager of Medford*, 7 Mass. App. Ct. 615, 619 (1979), where it was said that this court "will not permit the rules to subvert a just result."

the doctrine little more weight than the opportunity to exercise a controlled judicial discretion. See *In re Exterior Siding & Aluminum Coil Antitrust Litigation,* 696 F.2d 613, 614-618 (8th Cir. 1982), and the discussion in 1B Moore's Federal Practice, pars. 0.404[1]-0.404[4] (2d ed. 1982 & Supp. 1982-1983). See also *Coolidge Bank & Trust Co.* v. *First Ipswich Co.,* 11 Mass. App. Ct. 923, 924 (1981). We think that, in effect, the motion judge (although not compelled to treat as binding the rulings of the first Superior Court judges) has exercised reasonably whatever discretion he had under "law of the case" principles in favor of permitting DMI to recover in Massachusetts upon Viking's independent guaranty. See *Saporita* v. *Litner,* 371 Mass. at 620.

3. The question reported for decision by the motion judge must be answered that he correctly (a) allowed DMI's motion for summary judgment, and (b) denied Viking's similar motion. Any other result would raise serious questions whether the application of rule 13(a) and related principles of bar had not resulted in a serious miscarriage of justice (see note 8, *supra*). The case is remanded to the Superior Court for further proceedings consistent with this opinion.

APPENDIX 1

GUARANTY [BY VIKING]

(All emphasis supplied. Bracketed capital letters have been inserted for convenience in references.)

[A] IN CONSIDERATION OF certain financial accommodations to be given by . . . [DMI] (hereinafter . . . "Lender"), to . . . MOBILE (hereinafter . . . "Borrower"), the undersigned, jointly and severally, hereby *absolutely* and *unconditionally guarantee and promise to pay both principal and interest of that certain Promissory Note* (hereinafter called "Note"), executed by Borrower and made payable to the order of Lender in the principal sum of . . . $650,000 . . . with interest as specified in said Note, together with all other sums advanced by Lender or otherwise due

Lender pursuant to the terms of *the Loan Agreement and other Loan documents of even date* with said Note.

[B] This is a *guaranty of payment* rather than a guaranty of collection and the undersigned promise that upon any default by the Borrower in the payment of principal or interest of the Note or in the performance of any other obligation of the Note or of the Mortgage, Loan Agreement or other security instrument securing the Note on the part of the Borrower to be performed and upon demand made by the holder of said Note, the undersigned agree to pay to the holder of the Note the entire outstanding principal balance and all accrued interest thereon and any other sums then due under the terms of said Note, Mortgage, Loan Agreement and all other Loan documents.

[C] The obligations hereunder are *independent* of the obligations of the Borrower, and a *separate action* or actions may be brought and *prosecuted against the undersigned whether or not an action is brought against the Borrower or the Security for such obligations and whether or not the Borrower be joined in any such action* or actions, and whether or not notice be given or demand be made upon the Borrower; and the undersigned waive the benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof.

. . . . [Broad provisions, waiving notice to Viking of changes in guaranteed indebtedness, are omitted.]

[D] Upon *any default* on the Note, the holder of the Note may, at its option, proceed directly and at once, without notice or demand, *against the undersigned to collect and recover the full amount hereby guaranteed,* or any portion thereof, without proceeding against or giving notice to or making demand upon the Borrower or any other person, foreclosing upon, selling or otherwise disposing of or collecting or applying any property, real or personal, securing the Note (or any renewals or extensions thereof) or this Guaranty.

. . . . [Other broad provisions of waiver omitted.]

[E] . . . . Until all indebtedness of . . . [Mobile] to the Lender shall have been paid in full, the undersigned shall have no right to subrogation, and until such time the undersigned waive any right to enforce any remedy which the Lender now has or may hereafter have against the Borrower, and waive any benefit of and any right to participate in any security now or hereafter held by the Lender. The undersigned waive all exemptions, presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guaranty.

. . . . [Provisions against possible usury defenses omitted.]

[F] *This Guaranty is delivered to the Lender in Boston . . . as an inducement to the Lender to make the aforesaid Loan to the Borrower.*

[G] *This Guaranty shall be construed in accordance with the laws . . . of Massachusetts, which laws shall govern in the interpretation, construction and enforcement hereof.*

[H] The undersigned hereby *severally appoint the Secretary of State . . . of Massachusetts as their agent for the acceptance of substituted service of process upon them* and it is understood and agreed that *the undersigned,* severally, thereby *subject each of themselves to the in personam jurisdiction of any duly constituted court of `. . . Massachusetts* (upon compliance with the procedural laws and rules of *. . . Massachusetts*) *wherein an action may be brought by the holder of said Note for the enforcement of this Guaranty.*

This Guaranty shall inure to the benefit of the successors and assigns of the Lender and shall bind the heirs, personal representatives and successors of the undersigned.

. . . . [Definition of "Mortgage" omitted.]

Wherever used in this Guaranty, the singular number shall include the plural and the plural the singular and the use of any gender shall include all genders.

EXECUTED this 21st day of December, 1973

. . . . [Signatures of Viking and witnesses omitted.]


APPENDIX 2

PERTINENT PROVISIONS OF RESTATEMENT (SECOND)
OF JUDGMENTS

Relevant provisions (emphasis supplied) of Restatement (Second)
of Judgments (1980) include the following:

*Section 22* reads: "(1) Where the defendant may interpose a claim *as a counterclaim* but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

"(2) A defendant *who may interpose a claim as a counterclaim* in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

"(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

"(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

*Section 26* reads in part: "(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

"(a) The parties *have agreed in terms* or *in effect that the plaintiff may split his claim or the defendant has acquiesced therein* . . . ."

Section 26 comment a, in its final paragraph, recognizes that the failure of a party to object to the splitting of closely related claims, where two separate actions are pending concerning them, may be as "effective as an acquiescence in the splitting of the claim[s]" as if that party had "consented," in express words or otherwise, to the "splitting of the claim[s]."

Section 24 states in broad terms the dimensions of the term "claim" and the general rule concerning "splitting" a claim as these terms in general affect application of rules of merger or bar. The section also recognizes that what facts will constitute a "transaction" must be determined pragmatically and in accordance with business usage.