Neel, Stephen E., J.
Defendant Sprucewoods Realty Trust (Sprucewoods) and plaintiff Freya Fanning Co., LLC (Freya Fanning) submit for decision on the papers Sprucewoods’ Supplement to Motion to Dismiss, which is based upon res judicata. After consideration of the parties’ submissions, the motion will be allowed.
This action arises out of certain payments which Freya Fanning, as assignee of Orbit Construction, Inc. (Orbit), claims in connection with construction work on a New Hampshire residential development which Orbit performed under an April 3, 2000 purchase and sale agreement between Orbit’s assignor (HLA) and Sprucewoods (agreement). Sprucewoods moves to dismiss on the basis that Freya Fanning’s claim in this case has been adjudicated in the New Hampshire Superior Court for Strafford County (New Hampshire case), and is barred here by the doctrine of res judi-cata.
Freya Fanning argues that the motion should be denied because res judicata is an affirmative defense which, under Mass.R.Civ.P. 8, Sprucewoods was required, and failed, to assert in its answer. The Court has previously denied Sprucewoods’ first motion to dismiss, based upon lack of personal jurisdiction, because Sprucewoods similarly failed to assert that defense in its answer. The distinction here is that, at the time Sprucewoods filed its answer in this case on August 25, 2008, the personal jurisdiction defense was available, but the res judicata defense, which is based upon a July 22, 2009 adjudication in the New Hampshire case, was not. The Court will not penalize Sprucewoods for failing to amend its answer, as it has separately asserted the defense in the present motion.
On the merits, Sprucewoods’ motion turns on one question: was FreyaFanning’s claimfor per-unit water hook-up costs litigated and determined in the New Hampshire case? That case was an interpleader action, brought by the escrow agent (interpleader defendant McNeill, Taylor & Gallo, P.A., in this case), which forced Sprucewoods and Freya Fanning to litigate in that court their respective rights to the escrow fund of $140,000, established under the agreement for payment of Sprucewoods’ share of the cost of “Shared Infrastructure. ”
The agreement defines “Shared Infrastructure,” in para. 32, to include “roads, walks, landscaping, and utilities (including water).” Paragraph 32 then establishes the cost sharing arrangement, and provides for the escrow:
.. . Buyer [Orbit] and Seller [Sprucewoods] agree to divide the costs of constructing and maintaining such Shared Infrastructure according to the following formula: Seller shall bear 36% (50/140) and Buyer shall bear 64% (90/140) of all such costs other than those described in item (d) above [i.e., water supply system]. Costs associated with item (d) above shall be allocated between Buyer and Seller on the basis of total units to be served. Seller’s *575 share of costs in item (d) above shall be due and payable on a unit by unit basis at the time of issuance of a Certificate of Occupancy for each unit to be served. The per unit cost shall equal 0.8% of the total item (d) costs.
Because the actual design and construction of the Shared Infrastructure shall be undertaken primarily by the Buyer [HLA/Orbit], Buyer shall withhold . . . $140,000 . . . from the Purchase Price to cover Seller’s [Sprucewoods’] allocation of costs of the Shared Infrastructure. Upon completion of construction of all Shared Infrastructure, any excess funds withheld by Buyer shall be promptly paid to Seller. To the extent Buyer incurs costs relating to Seller’s allocated share of Shared Infrastructure that exceed the amount withheld, Seller shall promptly pay such excess to Buyer upon demand.
It is clear from the foregoing that the “Shared Infrastructure” costs “allocated” between Orbit and Sprucewoods include the per-unit hook-up costs (even though those “item (d)” costs are calculated not on a 36%-64% basis, but on a “unit by unit basis”). Because the $140,000 escrow fund was established “to cover Seller’s [Sprucewoods’) allocation of costs of the Shared Infrastructure,” it is also clear that the escrow fund was intended to reimburse, inter alia, Orbit’s claims for per-unit hook-up costs.
Freya Fanning asserted a claim for the latter costs in the New Hampshire case. In its “Answer, Affirmative Defenses and Further Statement” in that case, Freya Fanning alleges that, “pursuant to paragraph 32(d) of the [agreement], the parties agreed that Orbit would be responsible for the design and construction of a shared water supply system and that Sprucewoods would pay a ‘per unit hook up’ fee equal to 0.8% of the cost incurred by Orbit.” Id., “Further Statement of Freya Fanning,” para. 6.[2] By characterizing “Sprucewoods’ share” of the infrastructure costs as those set forth in paragraph 32, including the hook-up costs, see id., paras. 4-7, there is no doubt that Freya Fanning was seeking to recover those costs, either from the escrow fund or as excess costs, as its prayer for relief confirms: “Wherefore, Freya Fanning requests that the Court: . . . C. Alternatively, declare that Freya Fanning is entitled to the funds that McNeill deposited with the Court on June 20, 2008, with interest, and that Sprucewoods is liable to pay Freya Fanning its proportional share of the improvement costs and the agreed upon ‘per unit hook-up’ fee . . .’’ Freya Fanning’s Answer, at 9.
“The term ‘res judicata’ includes both claim preclusion and issue preclusion. ‘Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action.’ ” Kobrin v. Board of Registration in Medicine, 444 Mass. 837, 843 (2005) (citations omitted) (emphasis supplied). As noted above, the New Hampshire case plainly was one in which Freya Fanning’s claim for per-unit hook-up costs was or could have been adjudicated.[3] The only question remaining is whether “[Orbit] incurred] costs relating to [Sprucewoods’] allocated share of Shared Infrastructure that exceed the amount withheld,” agreement, para. 32, and if so, whether the New Hampshire case also disposed of Freya Fanning’s claims for such excess.
The Court concludes that the New Hampshire case adjudicated any claims for excess costs, at least indirectly. In the court’s Bench Trial Order (Brown, Presiding Justice), dated July 22, 2009 (Bench Trial Order), the court found that “the total cost expended to construct the Shared Infrastructure is incapable of being ascertained, given that the invoices submitted were incomplete, unreliable, and interchangeably refer to the Shared Infrastructure costs and the Property’s general contracting costs.” Id. at 7. Acting under its broad equitable powers, the court found that “equity requires that Fanning is entitled to one-half or fifty percent of the escrow funds and Sprucewoods is entitled to one-half or fifty percent of the escrow funds.” Id. at 8. Because under paragraph 32 of the agreement the Shared Infrastructure costs include the item (d) costs of constructing the water supply, the New Hampshire court has thus determined that the total cost expended to construct the Shared Infrastructure is incapable of being ascertained. That ruling resolves Freya Fanning’s claim with regard to the amount of Shared Infrastructure costs to which it is entitled, whatever the amount, and precludes litigation of that claim here.[4]
ORDER
For the reasons stated above, defendant Sprucewoods Realty Trust’s Supplement to Motion to Dismiss is ALLOWED.

 Freya Fanning prefaces its “Further Statement” with the following:. by way of a reques [sic] for relief, Freya Fanning states as follows: ..."

 The Court is not persuaded by Freya Fanning’s argument that Sprucewoods has “consented” to litígate the question of per-unit hook-up fees in this action as opposed to the New Hampshire case. While Sprucewoods asserted late its affirmative defense of personal jurisdiction, its answer in this case states that the escrowed funds “have since been interpled into the Strafford County Superior Court in New Hampshire In accord with Paragraph 10 of the Escrow Agreement,” Answer, para. 28, and denies that this Court has jurisdiction to grant a remedy, id., paras. 33, 34. Contrast Diversified Mortgage Investors v. Viking General Corp., 16 Mass.App.Ct. 142 (1983), upon which Freya Fanning relies, in which the defendant, Viking, had consented in the guaranty which underlay the action to enforcement of the guaranty in Massachusetts. Id. at 147-48.

 Freya Fanning argues that the per-unit hook-up costs were not adjudicated in the New Hampshire case. While the court in that case acknowledges that Shared Infrastructure includes item (d) water supply costs, Bench Trial Order, at 1-2, and notes that the 36%-64% allocation applies to all but the water supply system cost, id. at 2, it makes no further finding specifically addressing the latter. Nevertheless, as *576 discussed above, under the agreement such costs were included among costs to be paid out of the escrow fund, and Freya Fanning made a claim therefor, either as escrowed or excess costs, in the New Hampshire case. If the court in that case made either an erroneous finding or no finding in that regard, the claim nevertheless was “or could have been” adjudicated in that action, Kobrin, 444 Mass. at 843; to the extent that it was not, or was wrongly decided, Freya Fanning’s course was to appeal the New Hampshire court’s ruling, rather than to pursue here a claim that is precluded by that ruling.