Israel Louison *vs.* David I. Fischman & others.

Bristol.   January 7, 1960. — July 27, 1960.

Present: Wilkins, C.J., Williams, Counihan, Whittemore, & Cutter, JJ.

*Arbitration.   Res Judicata.   Damages,* For tort.

An action of tort against the rabbi and officers, directors, and members of a religious society to recover damages for causing the plaintiff's expulsion from the society and conspiring to do so was barred where, previous to the bringing of the action, a suit in equity by the plaintiff alleging injury to his reputation and feelings and praying for general relief had been dismissed by consent, the whole controversy over the plaintiff's expulsion had been submitted to arbitrators upon specific questions and a general authority "to make a final determination of any other issue or issues which they deem advisable," and the arbitrators had found that the plaintiff had been improperly expelled from the society and was still a member thereof in good standing and had ordered that he "pay his own counsel and his proportionate share of the expense of" the arbitration: the matter of the plaintiff's damages was concluded by the arbitration.

Tort.   Writ in the Superior Court dated May 10, 1957. The action was tried before *Noonan, J.,* who ruled that "a plea of res judicata" by the defendants had "been sustained" and ordered verdicts for the defendants. The plaintiff alleged exceptions.

*Melvin S. Louison,* for the plaintiff.

*Talbot T. Tweedy, (Edward Cooperstein* with him,) for the defendants.

Williams, J.   This is an action of tort by a member of Congregation Agudath Achim Inc., an incorporated religious society with a synagogue at Taunton, against the rabbi of the society and twenty-nine of its officers, directors and members to recover damages for causing him to be expelled from membership.   The action has been discontinued against four of the defendants.

The plaintiff's amended declaration contains two counts. In count 1 it is alleged that the expulsion was caused by sixteen of the defendants, referred to by name, who were officers and directors of the society, and in count 2 that

twenty-six of the defendants, also named, who were officers, directors and members of the society, including the rabbi, conspired together for the purpose of expelling him. In an amended answer the defendants plead that the plaintiff's' recovery of damages is barred by an award of arbitrators to whom, by agreement, the settlement of the controversy between the plaintiff and other members of the Congregation over his expulsion had been referred.

The document containing this award was introduced in evidence by the plaintiff. From the incidental findings and rulings of the arbitrators and from other evidence which was not controverted it appeared that the plaintiff had been a member of the Congregation for twenty-seven years, in twenty years of which he was a member of the board of directors. He became president in 1950 and was elected each year thereafter, his last election being on April 28, 1955. Difficulties arose between him and the board of directors shortly after this election when they refused to approve his appointment of certain committees and appointed other committees in their stead. The action of the board was in accordance with the by-laws. There were other controversies respecting the plaintiff's alleged abuse of "his presidential authority" in reference to matters of religious custom. As a result a special meeting of the board of directors, which was not properly called and of which the plaintiff received no notice, was held on May 15. At this meeting the rabbi read twelve charges against the plaintiff in reference to his violation of custom, "decorum" and ecclesiastical law. All members of the board voted him guilty. As a consequence of this meeting a rabbinical court was called to Taunton "to hear the matters involving the synagogue." The rabbinical court issued a final decree removing the plaintiff from the presidency of the Congregation and assigning all rights and authority of the office of president to the vice-president, the defendant David I. Fischman. By the decree the plaintiff was ordered to refrain from interference in the affairs of the Congregation. The board of directors voted to accept and execute this decree and in accordance therewith removed the plaintiff

as president and elected Fischman to fill the vacancy until the next election, to be held in the following April. The Congregation then held a meeting which was legally called on May 19 and confirmed the vote of the board of directors in executing the decree of the rabbinical court.

A second meeting of the Congregation was called for May 25 to determine whether the plaintiff should be expelled as a member of the Congregation. The plaintiff was notified of this meeting and attended. The twelve charges of the rabbi were read and, although no vote was taken upon them, it was voted on recommendation of the board of directors to expel the plaintiff from membership.

On May 24 the plaintiff had filed a bill in equity in the Superior Court No. 4758 against the Congregation and twenty of its directors in which he sought restoration to his office of president. He alleged injury to his reputation and feelings and prayed that the defendants be restrained from interfering with his duties as president and for general relief. The plaintiff's suit was dismissed by an agreement of the parties and the matters in controversy were submitted to arbitration.

The agreement for arbitration was executed on August 23 by authorized counsel for all parties to the suit. It provided that three named persons who were referees of the Associated Synagogues of Greater Boston should comprise the board of arbitration and that "their decision in all matters submitted shall be final without right of appeal or review," such right being expressly waived. The "matters to be decided are included in a document attached hereto and made part of this agreement, said issues having been agreed upon before" a judge of the Superior Court. This document was dated June 30 and was entitled "Issues agreed upon . . . for complete arbitration . . .." It referred to specific issues in the form of eight numbered questions and concluded with a general authorization to the arbitrators for findings in a paragraph numbered 9. The eight questions and the arbitrators' answers thereto were as follows: "1. Was the meeting of the Congregation on May 25th, 1955, legally held? [Answer Yes.]  2. Did that

meeting of May 25th, 1955, have the legal authority to expel
Israel Louison from membership in the Congregation?
[Answer Yes.]   3.   Did that meeting of May 25th, 1955,
legally and properly expel Israel Louison from membership
in the Congregation?   [Answer No.]   4.   Was the meet-
ing of the Congregation on May 19th, 1955, legally held?
[Answer Yes.]   5.   Did that meeting of May 19th, 1955,
have the legal authority to suspend or temporarily remove
Israel Louison as president of the Congregation?   [Answer
Yes.]   6.   Did that meeting of May 19th, 1955, legally and
properly suspend or temporarily remove Israel Louison as
president of the Congregation?   [Answer Yes.]   7.   Has
the president of the Congregation the absolute authority to
appoint the standing committees without the approval of
the board of directors?   [Answer No.]   8.   Has the presi-
dent of the Congregation the absolute authority to appoint
other committees without the approval of the board of
directors?   [Answer No.]''

In the final paragraph numbered 9 it was provided that
''notwithstanding the foregoing specific issues, the arbitra-
tors are empowered to make a final determination of any
other issue or issues which they deem advisable for the pur-
pose of bringing peace and harmony to the Congregation
and the community.''

After passing on the merits of the charges against the
plaintiff, which involved matters of ecclesiastical law and
custom and need not be considered by us (see *Moustakis* v.
*Hellenic Orthodox Soc.* 261 Mass. 462, 466), the board of
arbitration found that the plaintiff ''is still a member in
good standing of the Congregation and is entitled to all the
rights and privileges of such a member of the Congrega-
tion.''   It ordered that ''all parties to this action pay pro
rata the expenses of these hearings'' and ''specifically''
that the plaintiff ''pay his own counsel and his proportion-
ate share of the expense of these hearings.''   It ordered
that ''likewise, the individual defendants . . . pay their
counsel and proportionate share of the expenses . . . . The
Congregation is not to be assessed directly or indirectly for
any part of the expenses of this matter.''

The trial judge allowed a motion of the defendants to strike "all the testimony of the plaintiff to any events that transpired prior to the arbitration award and discussed, and all matters determined in the award or matters that could have been determined in the award within the framework of the bill of complaint" No. 4758, and the plaintiff excepted. The plaintiff offered to prove that the defendants did not pay individually their counsel as ordered by the arbitration award but that the Congregation paid them; that after the award he was not accepted or recognized as a member of the Congregation; that he brought a suit in equity No. 5077 seeking specific performance of the award; and that a final decree was entered therein ordering that the award be enforced. He further offered to prove his damages as alleged in his declaration. The judge ruled that the plea of "res judicata" had been sustained and subject to exceptions by the plaintiff ordered a verdict for the defendants on each count.

The agreement for arbitration was entered into by all the parties to the plaintiff's suit in equity No. 4758. They submitted without restrictions or conditions the whole matter in dispute, including all questions of law and fact. The decision of the arbitrators upon the subject matter was therefore binding and conclusive upon them, *J. F. Fitzgerald Constr. Co.* v. *Southbridge Water Supply Co.* 304 Mass. 130, 134, *Baldwin* v. *Moses,* 319 Mass. 401, 402, and a subsequent action upon the matter was barred. *Newburyport Marine Ins. Co.* v. *Oliver,* 8 Mass. 402. *Homes* v. *Aery,* 12 Mass. 134, 137. While no judgment can be entered on a common law award of arbitrators, *Kingsley* v. *Bill,* 9 Mass. 198, *Shearer* v. *Mooers,* 19 Pick. 308, the award may be enforced under the common counts, *Bates* v. *Curtis,* 21 Pick. 247, *Carpenter* v. *Edwards,* 10 Met. 200, *Burns* v. *Thomas Cook & Sons, Inc.* 317 Mass. 398, or in a suit in equity. *Jones* v. *Boston Mill Corp.* 4 Pick. 507. *Caldwell* v. *Dickinson,* 13 Gray, 365.

Although the award bars subsequent action on any matter specifically decided, it does not foreclose consideration of a question which might have been decided but was not.

*Hodges* v. *Hodges,* 9 Mass. 320. *King* v. *Savory,* 8 Cush. 309, 311–312. *Edwards* v. *Stevens,* 1 Allen, 315. *Evans* v. *Clapp,* 123 Mass. 165, 168. The award, however, is prima facie evidence that any matter which could have been adjudicated was in fact decided and the burden is upon the party seeking to avoid the effect of the award to show otherwise. *Webster* v. *Lee,* 5 Mass. 334, 336–337. *Bridge* v. *Gray,* 14 Pick. 55, 60. *Badger* v. *Titcomb,* 15 Pick. 409, 416. We think that the question of the plaintiff's damages was a matter submitted to the arbitrators by the provisions of paragraph 9. It was an issue in the plaintiff's equity suit No. 4758, the pendency of which was the immediate cause of the arbitration. The bill in that suit alleged injuries to feelings and reputation and prayed for general relief. See *Bleck* v. *East Boston Co.* 302 Mass. 127, 130. That the plaintiff's damages were considered by the arbitrators is shown by their specific order that the plaintiff pay his own counsel fees. These were items of expense alleged in the present action of tort.

A cause of action based upon the same facts ordinarily cannot be split. Damages in an action of tort must be assessed in one proceeding. *Dearden* v. *Hey,* 304 Mass. 659, 661–662. The award of the arbitrators was made in December, 1955, without, so far as appears, objection on the part of the plaintiff. On the contrary it appears from his offer of proof that thereafter he brought a bill in equity to enforce the award. He is not entitled to reopen the controversy with the Congregation and its members by insisting upon the recovery of items of damage which it appears were incurred prior to the award.

There was no error in directing verdicts for the defendants. The plea in bar contained in the defendants' answer was rightly sustained and the judge's ruling was decisive of the case. The parties to the arbitration agreement and those defendants who were alleged by the plaintiff in count 2 of his declaration to be "in privy" with them were bound by the award. Its legal effect would not have been affected by the additional evidence offered by the plaintiff.

*Exceptions overruled.*