**CHESTNUT HILL DEVELOPMENT
CORPORATION, Plaintiff,**

v.

**OTIS ELEVATOR
COMPANY, Defendant.**

**Civ. A. No. 86–1387–C.**

United States District Court,
D. Massachusetts.

June 18, 1990.

Paul S. Samson, Kevin Hern, Jr., Reimer and Braunstein, Boston, Mass., for plaintiff.

David Abelman, William H. Baker, Gregory M. Kennan, Nutter, MClennen & Fish, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a contract and unfair trade practices action brought by Chestnut Hill Development Corporation ("Chestnut Hill") against Otis Elevator Company ("Otis") for the alleged delayed installation and defective functioning of five elevators in a condominium complex owned by Chestnut Hill. The matter is now before the Court on defendant Otis' motion for summary judgment or partial summary judgment. Otis has moved for summary judgment on all claims brought by the plaintiff, Chestnut Hill, on the grounds that Chestnut Hill's claims are barred under the doctrines of res judicata and collateral estoppel. Alternatively, Otis has moved for partial summary judgment, requesting this Court to rule against Chestnut Hill on its product defect and Mass.Gen.L. ch. 93A claims on the basis of res judicata and to rule that Chestnut Hill may not recover damages in the form of interest carrying costs on its delay claims[1] because such damages are consequential and not recoverable under this Court's opinion and order of February 19, 1987. For the following reasons, this Court concludes that Otis' motion for summary judgment should be granted in part and denied in part.

### I.

Chestnut Hill was the owner and developer of Hampton Place, a condominium project located in Chestnut Hill, Massachusetts. On January 21, 1983, Chestnut Hill entered into a general contract with Vappi & Company, Inc. ("Vappi") for the construction of Hampton Place. On June 17, 1983, the defendant, Otis, entered into a

---

1. The term "delay claims" is used to refer to Chestnut Hill's breach of contract and breach of warranty claims in which it seeks damages resulting from Otis's delayed installation of the elevators.

subcontract with Vappi in which Otis agreed to furnish and install a total of five elevators at Hampton Place: one hydraulic elevator, two geared-drive elevators, and two battery powered elevators known in the trade as "Mid-rise Systems with Variable Frequency Drive Control" ("MRVF").

Otis agreed to have all of the elevators in operation at Hampton Place by March 1, 1984 for a price of $375,000. It is not disputed that two elevators were accepted by Vappi on August 3, 1984, two others were accepted on November 20, 1984, and the final elevator was accepted on December 17, 1984. Chestnut Hill complains that once the elevators were eventually installed, they were defective and did not operate properly. The problems with the elevators included excessive car noise during operation, rough and shaky rides, inoperative doors, failure to respond to calls, uneven levelling at floors, noisy ventilating fans, and excessive breakdowns.

On March 27, 1986, Chestnut Hill brought this action against Otis in the Middlesex Superior Court of the Commonwealth of Massachusetts, alleging a breach of contract and several breach of warranty claims [2] and seeking to recover for damages caused by the delay in installation and the defective operation of the elevators. In its complaint, Chestnut Hill also asserted an unfair and deceptive trade practices claim under Mass.Gen.L. ch. 93A ("Chapter 93A") against Otis seeking treble damages. See Mass.Gen.L. ch. 93A §§ 2, 11. Chestnut Hill alleged that Otis engaged in unfair and deceptive acts and practices in violation of Chapter 93A by making representations as to the exceptional performance of the MRVF elevators to induce Chestnut Hill to purchase them while it knew of their defective design and problems which existed with the functioning of these elevators nationwide. On May 1, 1986, Otis removed this action to this Court pursuant to 28 U.S.C. § 1441. This Court exercises diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.

### A. Middlesex I: *Chestnut Hill v. Vappi*

On September 16, 1986, Chestnut Hill brought an action in Middlesex Superior Court of the Commonwealth of Massachusetts ("Middlesex I") against Vappi, the general contractor of Hampton Place, and its surety, Insurance Company of North America ("INA"). In its complaint, Chestnut Hill asserted a breach of contract claim, a breach of warranty claim, and a Chapter 93A claim against Vappi. Chestnut Hill also stated a breach of bond claim against North America. Judging from the complaint, Chestnut Hill's 93A claim against Vappi apparently was based on Vappi's defective construction work and its failure and refusal to correct various defects in the construction of Hampton Place, including the defective functioning of the elevators installed by Otis.

The superior court granted Vappi's motion to compel arbitration of Chestnut Hill's claims, referred the claims to arbitration, and stayed the action pending arbitration. On June 10, 1987, the arbitration hearings commenced. Recognizing Otis' indemnity obligations for any liability arising out of Otis' elevator work, counsel for Otis appeared in the arbitration proceeding as co-counsel for Vappi to defend the elevator-related claims. The arbitration proceedings continued from June 10, 1987 through October 1988. On November 15, 1988, the arbitrator entered his Award and Findings. Regarding the elevator claims, the award stated:

> The elevators installed for Chestnut Hill Development Corp. at Hampton Place by Otis Elevator Company, a subcontractor to Vappi & Company, Inc. are operating satisfactorily, save for the MRVS and excessive noise complaints. Chestnut Hill Development Corp. is entitled to recover $30,000 for noise problems of the

---

**2.** Chestnut Hill's five-count complaint against Otis includes the following claims. Count I alleges that Otis breached its subcontract with Vappi of which Chestnut Hill is a third party beneficiary. Count II, III, and IV allege that Otis breached express and implied warranties arising out of that contract. Count V alleges that Otis engaged in unfair and deceptive trade practices in violation of M.G.L. c. 93A.

MRVS (including the maintenance claim to the extent one can be maintained).[3] The arbitrator also ruled: "[t]his award is in full settlement of all claims and/or counterclaims between the consenting parties submitted to this arbitration."

Chestnut Hill filed a motion to sever and partially vacate or modify the arbitrator's award. In its motion, Chestnut Hill argued that the arbitrator exceeded his powers in ruling that the arbitration had settled all claims and counterclaims between the parties and requested the superior court to strike that portion of the award. Chestnut Hill argued that the arbitrator had in fact failed and/or refused to rule on Chestnut Hill's Chapter 93A claim against Vappi and its indemnification and contribution claims against Vappi. The superior court judge denied Chestnut Hill's motion and confirmed the arbitration award in its entirety. In light of the arbitration award and findings, the superior court judge allowed Vappi's motion for summary judgment against Chestnut Hill.

### B. Middlesex II: *Trustees v. Chestnut Hill v. Otis*

In the fall of 1987 while the arbitration hearings were proceeding, the Trustees of the Hampton Place condominium project, as successor owners of Hampton Place, brought an action against Chestnut Hill seeking to recover for the defects in construction, including the elevator defects. Chestnut Hill filed a third-party complaint against Otis, Vappi, INA, and other Hampton Place subcontractors. In its third-party complaint, Chestnut Hill asserted claims for indemnification and contribution against Otis for any liability to the Trustees for elevator defects. Chestnut Hill also brought a Chapter 93A claim against Otis for its refusal to comply with its war-

ranties by its failure to correct the defects in the elevators and their functioning.[4]

After confirmation of the arbitration award, Otis and the other third-party defendants moved for summary judgment. Otis argued that under the doctrines of res judicata and collateral estoppel, the arbitration award precluded Chestnut Hill's claims against Otis, including its Chapter 93A claim. In its opposition, Chestnut Hill argued that the doctrines of res judicata and collateral estoppel did not bar its claims against Otis because Otis was not a party to the arbitration and the arbitrator did not decide Chestnut Hill's indemnification claim or its Chapter 93A claim against Otis. The superior court judge rejected Chestnut Hill's arguments and on May 18, 1989 allowed Otis' motion for summary judgment on the third-party claims. On August 18, 1989, the superior court entered final judgment pursuant to Mass.R.Civ.P. 54(b) and "dismiss[ed] with prejudice all claims by third-party plaintiff Chestnut Hill against the third-party defendants in this action." In entering final judgment, the superior court ruled:

> (i) all issues raised by Chestnut Hill's claims against the third-party defendants were resolved by a prior litigation and arbitration and are thus barred under the doctrines of res judicata and collateral estoppel....

### II.

In the action before this Court, Otis now moves for summary judgment on all of Chestnut Hill's claims on the ground that they are barred under the doctrine of res judicata and/or involve issues that Chestnut Hill is precluded from relitigating under the doctrine of collateral estoppel. Specifically, Otis argues that under the

---

**3.** As indemnitor to Vappi, Otis has recognized its responsibility for the $30,000 in elevator-related damages awarded by the arbitrator to Chestnut Hill.

**4.** The Chapter 93A claim brought by Chestnut Hill in its third-party complaint in the Middlesex II action is grounded upon different factual allegations than the Chapter 93A claim that Chestnut Hill asserts in the action before this Court. The Chapter 93A claim in Middlesex II

is based upon Otis's breach of warranties by its failure to correct the elevator defects whereas Chestnut Hill's Chapter 93A claim against Otis in this federal action is based not only upon Otis's failure to remedy the defects as warranted, but also upon Otis's representations inducing Chestnut Hill to purchase the MRVF elevators while Otis allegedly knew of their defective design and components.

doctrine of res judicata, the confirmed arbitration award in Middlesex I and the superior court's summary judgment on the third-party complaint in Middlesex II bar Chestnut Hill's claims in the action before this Court. Additionally, Otis contends that Chestnut Hill is precluded under the doctrine of collateral estoppel from relitigating issues, such as the preclusive effect of the arbitration on Chestnut Hill's claims, allegedly decided in those prior actions. In addressing Otis' arguments, this Court will apply Massachusetts law because "federal courts are to give state court judgments the res judicata effect that state law prescribes." *Isaac v. Schwartz*, 706 F.2d 15, 16 (1st Cir.1983).

■ The doctrine of res judicata bars relitigation of a claim that has been adjudicated in a prior action involving the same parties or their privies. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Ratner v. Rockwood Sprinkler Co.*, 340 Mass. 773, 775, 166 N.E.2d 694 (1960); *Assoc. Gen. Contractors v. Boston Dist. Council*, 642 F.Supp. 1435, 1438 (D.Mass.1986). The doctrine of res judicata is founded upon considerations of fairness, the necessity for finality in litigation, and the requirements for efficient judicial administration. *Commissioner*, 333 U.S. at 597, 68 S.Ct. at 719; *Harker v. City of Holyoke*, 390 Mass. 555, 558, 457 N.E.2d 1115 (1983) (quoting *Baldwin v. Iowa State Travelling Men's Assn.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931)); *Wright Machine Corp. v. Seaman–Andwall Corp.*, 364 Mass. 683, 688, 307 N.E.2d 826 (1974). The "opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim." *Wright*, 364 Mass. at 688, 307 N.E.2d 826. For these reasons, "a valid and final judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." Restatement (Second) of Judgments § 19, *quoted in Fluhr v. Allstate Ins. Co.*, 15 Mass.App.Ct. 983, 984, 447 N.E.2d 1254 (1983). For res judicata to operate, the concurrence of three elements is required: (1) identity or privity of the parties to the present and prior actions; (2)

identity of the causes of action; and (3) a prior final judgment on the merits. *Almeida v. Travelers Ins. Co.*, 383 Mass. 226, 229, 418 N.E.2d 602 (1981); *Franklin v. North Weymouth Coop. Bank*, 283 Mass. 275, 280, 186 N.E. 641 (1933); *Associated*, 642 F.Supp. at 1438.

■ In barring subsequent actions on the same claim, res judicata prevents the relitigation of "issues that were or could have been dealt with in" the earlier litigation. *Commissioner*, 333 U.S. at 597, 68 S.Ct. at 719 (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)); *Dowd v. Society of St. Columbans*, 861 F.2d 761, 763 (1st Cir.1988); *Isaac*, 706 F.2d at 16 (quoting *Angel v. Bullington*, 330 U.S. 183, 193, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947)); *Ratner*, 340 Mass. at 775, 166 N.E.2d 694 (prior adjudication acts as a bar to a later proceeding upon the same cause of action as to every issue that in fact was or in law might have been litigated). As stated in the Restatement (Second) of Judgments, "[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24, *quoted in Isaac*, 706 F.2d at 16; *Boyd v. Jamaica Plain Co-op Bank*, 7 Mass.App.Ct. 153, 163, 386 N.E.2d 775 (1979); *Dowd*, 861 F.2d at 763. A second action is barred under res judicata even if the plaintiff asserts a new theory of recovery or seeks a new remedy so long as the second action grows out of the same transaction, act, or agreement upon which the previous claim was based. *Mackintosh v. Chambers*, 285 Mass. 594, 596, 190 N.E. 38 (1934); *Ratner*, 340 Mass. at 776, 166 N.E.2d 694; *Isaac*, 706 F.2d at 17; *Associated*, 642 F.Supp. at 1438.

"It is well settled, however, that 'even where the technical requirements of res judicata have been established, a court may nonetheless refuse to apply the doctrine.' " *Loring v. Marshall*, 396 Mass. 166, 175,

484 N.E.2d 1315 (1985) (O'Connor, J., dissenting) (quoting *International Harvester Co. v. Occupational Safety & Health Review Comm'n*, 628 F.2d 982, 986 (7th Cir. 1980)). Because the doctrine of res judicata is grounded upon considerations of fairness and efficient judicial administration, the doctrine should not be applied rigidly where such interests would not be served. *See Loring*, 396 Mass. at 175–76, 484 N.E.2d 1315; *Donahue v. Draper*, 22 Mass.App.Ct. 30, 44 n. 22, 491 N.E.2d 260 (1986); *Diversified Mortgage Investors v. Viking General Corp.*, 16 Mass.App.Ct. 142, 148–49, 450 N.E.2d 176 (1983). *See Boucher v. Dramstad*, 522 F.Supp. 604, 607 (D.Mont.1981) ("[R]es judicata is a principle of public policy to be applied so as to render rather than deny justice. The rule is intended to serve the aims of fairness and efficient judicial administration and need not be applied mechanically where those ends would not be served."); *In re Scientific Control Corp.*, 80 F.R.D. 237, 243 (S.D.N.Y.1978) ("Underlying principles of public policy, fairness and equity must temper application of the doctrine of res judicata where rigidity, injustice or unfairness would ensue."). Acknowledging the flexible nature of the doctrine of res judicata, the Restatement (Second) of Judgments identifies several limited exceptions to the general rules of res judicata. *See* Restatement (Second) of Judgments § 26. *See also Feener v. New England Telephone & Telegraph*, 20 Mass.App.Ct. 166, 170, 478 N.E.2d 1289 (1985); *Diversified*, 16 Mass. App.Ct. at 148–49, 450 N.E.2d 176. One such exception to the bar of res judicata is made when a defendant has agreed or acquiesced in a plaintiff's splitting of its claim between two actions. Restatement (Second) of Judgments § 26(1)(a), § 26 comment a; *Diversified*, 16 Mass.App.Ct. at 148–49, 450 N.E.2d 176. *Cf. Prudential Ins. Co. of America v. Board of Appeals of Westwood*, 18 Mass.App.Ct. 632, 636, 469 N.E.2d 501 (1984).

Finally, for res judicata purposes, summary judgment granted upon a determination that the moving party is entitled to judgment as a matter of law constitutes a final judgment on the merits. *Prakash v. American University*, 727 F.2d 1174, 1182 (D.C.Cir.1984); *Associated*, 642 F.Supp. at 1439; *Wright*, 364 Mass. 683, 695, 307 N.E.2d 826 (1974) (applying Delaware law). Summary judgment granted on the basis of res judicata involves such a determination and should be given res judicata effect. *See Wright*, 364 Mass. at 692–95, 307 N.E.2d 826.

An arbitration award also has res judicata effect, but only as to any matter actually decided by the arbitrator or necessary to his or her decision. *Louison v. Fischman*, 341 Mass. 309, 313, 168 N.E.2d 340 (1960); *Bailey v. Metropolitan Property & Liability Ins. Co.*, 24 Mass.App.Ct. 34, 36, 505 N.E.2d 908 (1987); Restatement (Second) of Judgments § 84 (1982). Unlike a court's judgment, an arbitration does not foreclose consideration of an issue which might have been decided in the arbitration, but was not. *Louison*, 341 Mass. at 313, 168 N.E.2d 340. Accordingly, given that "mutuality of estoppel" is no longer required,[5] "a party not involved in a prior arbitration may use the award in that arbitration to bind his opponent if the party to be bound, or a privy, was before the arbitrator, had a full and fair opportunity to litigate the issue, and the issue was actually decided by the arbitrator or was necessary to his decision." *Bailey*, 24 Mass. App.Ct. at 37, 505 N.E.2d 908.

Related to the doctrine of res judicata is the doctrine of collateral estoppel. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Collateral estoppel, or issue preclusion, precludes a party from relitigating an issue that a court has already decided in another proceeding. *Id.* at 326 n. 5, 99 S.Ct. at 649 n. 5; *Martin v. Ring*, 401 Mass. 59, 61, 514 N.E.2d 663 (1987); *Boyd*,

---

**5.** *Parklane Hosiery Co., Inc. v. Share*, 439 U.S. 322, 326–27, 99 S.Ct. 645, 649–50, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971); *Home Owners Federal Savings & Loan v. Northwestern Fire & Marine Insurance Company*, 354 Mass. 448, 452–55, 238 N.E.2d 55 (1968).

7 Mass.App.Ct. at 159, 386 N.E.2d 775; *Associated,* 642 F.Supp. at 1442; *Kalman v. Berlyn Corp.,* 614 F.Supp. 1327, 1329 (D.Mass.1985). "The operation of collateral estoppel has four prerequisites: 1) the issue in the two suits must be identical; 2) the issue must have been 'actually litigated' in the first suit; 3) the issue must have been necessary to the first decision; and 4) the party to be estopped must have had substantial control over the first litigation." *Kalman,* 614 F.Supp. at 1329–30; *Martin,* 401 Mass. at 61, 514 N.E.2d 663; *Rudow v. Fogel,* 376 Mass. 587, 591, 382 N.E.2d 1046 (1978); *Boyd,* 7 Mass.App.Ct. at 159–60, 386 N.E.2d 775. Again, because mutuality of estoppel is no longer always required, "[a] nonparty may use collateral estoppel defensively against a party to the original action, who had a full and fair opportunity to litigate the issue in question." *Martin,* 401 Mass. at 61, 514 N.E.2d 663; *Home Owners,* 354 Mass. at 455, 238 N.E.2d 55.

### A. Res Judicata Effect of the Arbitration

■ Otis first argues that Chestnut Hill's claims to recover damages for defects in the elevators are barred by the confirmed arbitration award in Middlesex I. Otis argues that the defect claims were presented to and decided by the arbitrator, and the arbitrator's award should now preclude the readjudication of these claims. Chestnut Hill was a party to the arbitration connected with the Middlesex I action. Although Otis' counsel appeared on behalf of Vappi, Otis was not a party to that arbitration. Nevertheless, because Chestnut Hill was a party to the arbitration, Otis may use the arbitration award to bind Chestnut Hill as to any issue that Chestnut Hill had a fair opportunity to litigate and that was specifically decided by the arbitrator or was necessary to his decision. *See Bailey,* 24 Mass.App.Ct. at 37, 505 N.E.2d 908. As is evident from the arbitration award, the arbitrator clearly decided the issue of the defective functioning of the elevators. As a party to the arbitration, Chestnut Hill had a fair opportunity to litigate this issue. Finding in favor of Chestnut Hill on the issue of defects, the arbitrator awarded Chestnut Hill $30,000 in damages for the noise problems and continued maintenance.

Chestnut Hill, therefore, should be precluded from relitigating the issue of the defects in the elevators and from receiving a double recovery for these defects. Otis has already indemnified Vappi for this $30,000 damage award. Accordingly, summary judgment should be granted on Chestnut Hill's breach of contract and warranty claims in the instant action insofar as Chestnut Hill seeks to recover damages for the cost of new elevators and for the defective functioning of the elevators under these claims.[6]

■ Otis also argues that the arbitration award bars Chestnut Hill's Chapter 93A claim against Otis in its entirety because this claim also was presented to and decided by the arbitrator. Otis further contends, however, that this Court is prevented under the doctrine of collateral estoppel from deciding the issue of whether the arbitrator adjudicated Chestnut Hill's Chapter 93A claim against Otis because the superior court judge in Middlesex II decided that issue.[7] Again, in Chestnut Hill's

---

**6.** Under this ruling, Chestnut Hill's contract claim and warranty claims will survive insofar as they are based upon the delayed installation of the elevators. This Court, however, is skeptical about Chestnut Hill's ability to state a claim for breach of warranty based solely on delay in installation. As such, Chestnut Hill may decide to withdraw its surviving breach of warranty claims, or Otis may move to dismiss the warranty claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**7.** Otis also argued that the same superior court judge necessarily decided that the arbitrator did adjudicate Chestnut Hill's Chapter 93A claim against Otis when it denied Chestnut Hill's motion to sever and partially vacate the arbitration award in Middlesex I. In making this argument, however, Otis neglects the fact that when Chestnut Hill moved to partially vacate the arbitrator's award, it was concerned only about the effect of the arbitration on its Chapter 93A claim against Vappi, not on its 93A claim against Otis. As Chestnut Hill argued in its motion, "the arbitrator failed and/or refused to rule upon Chestnut Hill's indemnification and contribution claims against Vappi & Company as well as Chestnut Hill's claims pursuant to

third-party complaint in Middlesex II, Chestnut Hill asserted a Chapter 93A claim against Otis based upon Otis' breach of its warranties by its failure to correct the elevator problems. The superior court granted summary judgment for Otis, ruling that the arbitrator had resolved this Chapter 93A claim and that it was therefore barred under the doctrine of res judicata.

Even if the superior court's conclusion that the arbitrator decided the Chapter 93A claim based upon Otis' breach of warranties is erroneous, under the doctrine of collateral estoppel, Chestnut Hill is estopped from relitigating before this Court the identical issue decided by the superior court. Upon examination of the issue decided by the superior court and the issue presented to this Court, however, this Court is convinced that the two issues are different. The question decided by the superior court was whether Chestnut Hill's Chapter 93A claim based upon Otis' failure to fulfill its warranties and correct defects in the elevators was decided by the arbitrator. The issue now presented to this court is whether Chestnut Hill's Chapter 93A claim in this action, which is based upon Otis' failure to correct the defects as well as its misrepresentations concerning the MRVF elevators, was decided in the prior arbitration. As is evident, the question before this court is broader than the question decided by the superior court in Middlesex II. Thus, although this court is bound by the superior court's ruling that the Chapter 93A claim for failure to correct defects was decided by the arbitrator, this Court is free to consider whether Chestnut Hill's Chapter 93A claim based upon Otis' misrepresentations was decided in the prior arbitration.

Upon examination of the arbitration transcript submitted by Chestnut Hill, this Court finds that the arbitrator did not decide and refused even to consider Chestnut Hill's misrepresentation claim under Chapter 93A against Otis.[8] Accordingly, Otis' motion for summary judgment on Chestnut Hill's Chapter 93A claim should be denied in part insofar as it is grounded upon Otis' misrepresentations regarding the MRVF elevators, but granted in part insofar as it is based upon Otis' breach of warranties by its failure to correct the elevator defects.[9]

### B. Res Judicata Effect of the Superior Court's Summary Judgment

█ Finally, Otis contends that under the doctrine of res judicata, Chestnut Hill's

---

Massachusetts General Laws, Chapter 93A against Vappi & Company." Since the arbitrator had made clear that he would not decide any of Chestnut Hill's claims against Otis, including the Chapter 93A claim, Chestnut Hill had no reason at that time to worry about the effect of the arbitration on its Chapter 93A claim against Otis. Accordingly, in denying Chestnut Hill's motion in Middlesex I, the superior court did not even need to consider whether Chestnut Hill's Chapter 93A claim against Otis was decided by the arbitrator. This Court notes its disapproval of this argument by Otis's counsel given that he had full knowledge of the arguments in Chestnut Hill's motion and was present at the arbitration where the following colloquy took place:

> Mr. Hern (Chestnut Hill's counsel): So as I understand it, the issue as it relates to Otis—in other words, Otis's representations or lack of representations regarding it—is an issue that the Arbitrator is not going to hear.
> Arbitrator: Otis is not here as a right.... There will be no finding against Otis. Whatever finding there is will be against Vappi.
> Mr. Hern: So in terms of our 93A action as it relates to the federal court proceeding, that isn't touched by this thing?

Arbitrator: That's right.

**8.** *See supra* note 7.

**9.** Under the surviving Chapter 93A claim, Chestnut Hill may not relitigate the issue of whether the MRVF elevator was defective or the amount of damages recoverable for defects in the MRVF elevator. The arbitrator decided those issues in the arbitration between Chestnut Hill and Vappi: "The elevators installed for Chestnut Hill Development Corp. at Hampton Place by Otis Elevator Company, a subcontractor to Vappi & Company, Inc. are *operating satisfactorily, save for the MRVS and excessive noise complaints. Chestnut Hill development Corp. is entitled to recover $30,000 for noise problems of the MRVS (including the maintenance claim to the extent one can be maintained)."* Thus, if Chestnut Hill is successful in proving a violation of Mass.Gen.L. ch. 93A, § 2, it is limited on the question of actual damages, although it may recover "up to three, but not less than two times" the amount of actual damages. Mass. Gen.L. ch. 93A, § 9.

breach of contract and warranty claims based upon Otis' delay in installation of the elevators should be barred by the superior court's summary judgment on Chestnut Hill's third-party claims in Middlesex II. Highlighting that res judicata prevents the relitigation of any claims that were or could have been asserted in a prior action, Otis argues that Chestnut Hill's delay claims are barred because Chestnut Hill could have asserted its delay claims in its third-party complaint against Otis in Middlesex II. This argument by Otis likewise applies to Chestnut Hill's surviving Chapter 93A claim based on the alleged fraudulent misrepresentations of Otis.

Otis is correct that the doctrine of res judicata disfavors claim splitting and bars subsequent actions on the same claim. In this context, "claim" is defined broadly. "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24, *quoted in Isaac,* 706 F.2d at 16 and *Boyd,* 7 Mass.App.Ct. at 163, 386 N.E.2d 775.[10] In light of these standards defining the scope of a "claim" for purposes of res judicata, it is clear that Chestnut Hill's delay claims and its Chapter 93A claim before this Court are parts of the same larger "claim" which includes the indemnification, contribution and Chapter 93A claims asserted by Chestnut Hill in its third-party complaint in Middlesex II. All of these claims arose out of the same transaction, namely the installation of elevators at Hampton Place. Thus, Otis appears to be correct in its initial assertion that Chestnut Hill has split its claim.

Nevertheless, Otis' argument that because Chestnut Hill has split its claim, Chestnut Hill must necessarily be barred from litigating its delay claims and Chapter 93A claim, although correct under the general rules of res judicata, must fail in light of the circumstances, the equities, and an exception to the general rules of res judicata applicable in this case. First, this is not the situation where judgment is entered against a plaintiff in an action and the plaintiff then brings a second action, asserting a different theory of recovery, in an attempt to obtain a second, more favorable judgment. In the instant case, Chestnut Hill brought all of the claims it had against Otis in one action in Middlesex superior court on March 27, 1986. Otis removed that action to this Court, and it has proceeded before this Court and throughout discovery for three years.

When the Trustees brought an action against Chestnut Hill in Middlesex II, Chestnut Hill asserted third-party claims against Otis to protect itself. In its third party-complaint, however, Chestnut Hill did not include the claims that were pending here in federal court. The logical explanation for this is that Chestnut Hill anticipated that these claims would be adjudicated in federal court where they were already proceeding and did not want to duplicate those proceedings. Thus, in its third-party complaint in Middlesex II, Chestnut Hill only asserted as many claims as were necessary to protect itself against liability to the Trustees in that action. By its actions, Chestnut Hill never attempted to obtain a second, more favorable judgment or to burden the courts or the defendant, but rather appears to have been concerned with judicial economy and resources. Accordingly, neither the equities nor the policy behind the doctrine of res judicata support barring Chestnut Hill's delay claims or its Chapter 93A claim in this action simply because they could have been asserted in the third-party complaint in Middlesex II which was brought after this action was proceeding before this Court.

**10.** The Restatement (Second) of Judgments states further: "What factual grouping constitutes a 'transaction' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding of usage." Restatement (Second) of Judgments § 24(2).

More importantly, however, the equities in this case are supported by the body of law articulating the doctrine of res judicata. Under the doctrine of res judicata, where a claim has been split, a final judgment on part of the claim will not bar the other parts of the claim if "[t]he parties have agreed in terms or in effect that the plaintiff may split its claim, or the defendant has acquiesced therein. . . ." Restatement (Second) of Judgments § 26(1)(a); *Diversified,* 16 Mass.App.Ct. at 148–49, 450 N.E.2d 176. Expanding on this exception to the general rule against claim splitting, the comment to the Restatement states:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based upon the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26, comment a. In the instant case, the action before this Court preceded the Middlesex II action in which the Trustees sued Chestnut Hill, and Chestnut Hill in turn asserted third-party claims against Otis. Chestnut Hill then simultaneously maintained its third-party complaint in Middlesex II and its action in this Court, which were both based upon parts of the same claim. The defendant, Otis, acquiesced in the splitting of this claim. Otis proceeded in the action before this Court, participated in discovery, did not bring the Middlesex II third-party claims to this Court's attention, and never objected to the splitting of Chestnut Hill's claim. Furthermore, there is no evidence in the record that Otis ever objected in the state court action to Chestnut Hill's splitting of the claim. Thus, the summary judgment entered on Chestnut Hill's third-party claims in Middlesex II should not preclude Chestnut Hill from proceeding and obtaining judgment on its delay claims and its Chapter 93A claim in the action

before this Court. Accordingly, Otis' motion for summary judgment on Chestnut Hill's delay claims and its Chapter 93A claim should be denied.

## III.

■ On February 19, 1987, this Court held that because "[t]he Otis–Vappi subcontract expressly bars the recovery, by either party, of consequential damages," Chestnut Hill was not entitled to recover consequential damages sustained as a result of the alleged breach by Otis. 653 F.Supp. 927, 931 (1987). In its motion for summary judgment, Otis alternatively argues that Chestnut Hill may not recover damages in the form of interest carrying costs on the entire Hampton Place project sustained as a result of the installation delay because these damages are consequential damages and not recoverable pursuant to this Court's February 19, 1987 opinion and order. The issue of whether damages are consequential or direct is a question of law and properly determined on summary judgment. *See* C. McCormick, Damages § 140 (1935).

Direct damages or general damages are damages that " 'flow according to common understanding as the natural and probable consequences of the breach,' that is, those arising naturally 'according to the usual course of things, from such breach of contract itself.' " *Boylston Housing Corp. v. O'Toole,* 321 Mass. 538, 562, 74 N.E.2d 288 (1947) (quoting *Hadley v. Baxendale,* 9 Exch. 341, 354 (1854)). Consequential damages are damages that do not arise naturally or ordinarily from a breach of contract, but which arise because of the intervention of special circumstances. *Boylston,* 321 Mass. at 563, 74 N.E.2d 288. Consequential damages ordinarily are compensable only if they " 'may be presumed to have been in the contemplation of the parties at the time the contract was made' by reason of special circumstances known to the parties." *Id.* By order of this Court, however, consequential damages may not be recovered in this case even if they were within the contemplation of the parties. Chestnut Hill is limited to direct dam-

ages—those that flow naturally from the breach of contract resulting from the delay in installation of the elevators.

Otis contends that interest carrying charges constitute consequential damages while Chestnut Hill argues that such charges flow naturally from the installation delay. In support of its argument, Otis directs this Court's attention to the case of *Boylston v. O'Toole* [11] in which the Massachusetts Supreme Judicial Court held that damages for the loss of rents for apartments caused by a delay in the installation of elevators in an apartment house were consequential damages and not recoverable under the contract in that case. 321 Mass. at 563, 74 N.E.2d 288. Otis argues that *Boylston* is directly on point and that interest-carrying charges, like lost rents, are consequential damages because they do not arise "according to the usual course of things, from such breach of contract itself," but can arise only as a consequence of special circumstances. *See Boylston,* 321 Mass. at 563, 74 N.E.2d 288 (quoting *Hadley,* 9 Exch. at 354).

Opposing Otis' argument, Chestnut Hill cites cases from states other than Massachusetts in which courts have held that additional financing charges, such as interest carrying charges, incurred as a result of delays in construction constitute direct, not consequential, damages. *See Roanoke Hospital Ass'n. v. Doyle & Russell, Inc.,* 215 Va. 796, 214 S.E.2d 155, 160–61 (1975) (in an action by an owner against a general contractor arising out of a contract for the construction of a building, the court held that extended financing costs because of delay in completion are direct damages); *Elar Investments, Inc. v. Southwest Culvert Co., Inc.,* 139 Ariz. 25, 676 P.2d 659, 662–63 (Ariz.Ct.App.1983) (in an action by a developer against a supplier of prefabricated steel for the construction of townhouses, the court held that extended financing charges resulting from delay in delivery were direct damages). *See also Havens Steel Co. v. Randolph Engineering Co.,* 613 F.Supp. 514, 541 (W.D.Mo.1985) (in

an action by a contractor against a subcontractor for defective work, court held that interest charges on monies borrowed to finance additional work was recoverable as ordinary, direct or foreseeable damages), *aff'd,* 813 F.2d 186, 188 (8th Cir.1987); *New Amsterdam Casualty Co. v. Mitchell,* 325 F.2d 474, 476 (5th Cir.1963) (in an action on a contractor's performance bond against a surety, the court held that additional interest paid on a construction loan because of delay in completion of construction was a proper element of damages). In holding that extended financing costs, namely additional interest to carry a construction loan during a period of delay in construction, were direct damages, the *Roanoke* court in particular reasoned:

> Customarily, construction contracts, particularly large contracts, require third-party financing. Ordinarily, delay in completion requires an extension of the term of construction financing. The interest costs incurred and the interest revenue lost during such an extended term are predictable results of the delay and are, therefore, compensable direct damages.

*Roanoke,* 214 S.E.2d at 160–61. The cases relied upon by Chestnut Hill are more on point than the Massachusetts case of *Boylston* because they involved damages in the form of additional financing charges whereas *Boylston* involved lost rents. This Court is persuaded by the reasoning in those cases, particularly by the court in *Roanoke. See id.*

This case is distinguishable from *Boylston,* the Massachusetts case relied upon by Otis, because damages in the form of interest carrying charges, at issue in this case, are not the same as damages for lost rents, which were at issue in *Boylston.* Loss of rents because of delay in installation of elevators is dependent upon the special circumstance that the apartments or condominium units are rented. Rental of units is unrelated to the construction or elevator installation contract. As such,

---

11. The precise issue of whether interest carrying charges constitute consequential damages has not been addressed by any Massachusetts court. Moreover, neither Otis nor Chestnut Hill has cited any other Massachusetts case even relevant to this issue.

lost rents caused by delayed installation of elevators are properly characterized as consequential damages. To the contrary, when the installation of elevators is delayed, thus delaying completion of a construction project, extended financing costs flow naturally from the delay. Financing costs, such as interest charges on construction loans, are closely related to a subcontract for the installation of elevators in a condominium project under construction. Such additional financing charges, therefore, constitute direct damages.

Accordingly, this Court holds that the interest carrying charges incurred during the three month period of Otis' delayed installation of the elevators are direct damages. As direct damages, these extended charges are recoverable under this Court's opinion and order of February 19, 1987, and therefore, Otis' motion for summary judgment on this ground is denied.

### IV.

In summary, Otis' motion for summary judgment should be granted in part and denied in part. Summary judgment should be granted in part on Chestnut Hill's count I breach of contract claim, but only insofar as Chestnut Hill seeks to prove a breach of contract by the defective condition of the elevators and to recover for such defects. The breach of contract claim, however, survives to the extent that it is based upon Otis' delayed installation of the elevators.

Similarly, summary judgment should be granted in part on Chestnut Hill's count II, III, and IV breach of warranty claims insofar as these claims are based upon the defective functioning of the elevators. The breach of warranty claims, however, do survive insofar as they may be grounded upon the delay in installation.

Summary judgment should be granted on Chestnut Hill's count V Chapter 93A claim insofar as it is based upon Otis' breach of warranties by its failure to correct the defective functioning of the elevators. The Chapter 93A claim, however, survives to the extent that it is grounded upon Otis' alleged misrepresentations concerning the MRVF elevators. Yet, although Chestnut

Hill may recover double or treble damages if it proves the surviving Chapter 93A claim, it is bound by the arbitrator's ruling that the actual damages recoverable for the defective functioning of the elevators was $30,000. Again, Chestnut Hill is precluded from relitigating the issue of the defectiveness of the elevators and the amount of actual damages for such defects because these issues were decided in the prior arbitration.

Finally, Otis' motion for summary judgment against Chestnut Hill on its claim for damages in the form of interest carrying costs should be denied.

Order accordingly.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

Defendant Otis Elevator Company's motion for summary judgment is granted in part and denied in part:

1) Summary judgment is granted on Chestnut Hill's Count I breach of contract claim insofar as it is based upon the defectiveness of the elevators.

2) Summary judgment is denied on Chestnut Hill's Count I breach of contract claim insofar as it is grounded upon the delayed installation of the elevators.

3) Summary judgment is granted on Chestnut Hill's Count II, III, and IV breach of warranty claims insofar as they are based upon the defective functioning of the elevators.

4) Summary judgment is denied on Chestnut Hill's Count II, III, and IV breach of warranty claims insofar as they are grounded upon delay in installation.

5) Summary judgment is granted on Chestnut Hill's Count V Chapter 93A claim insofar as it is based upon Otis' breach of warranties by its failure to correct the elevator defects.

6) Summary judgment is denied on Chestnut Hill's Count V Chapter 93A claim insofar as it is grounded upon Otis' misrep-

resentations concerning the MRVF eleva-
tors.