Cowin, J.
This action arises out of a contract dispute between plaintiff Pentagram Software Corporation (“Pentagram”) and defendant Voicetek Corporation (“Voicetek”). Voicetek had contracted with GTE Mobilnet (“GTE") to provide a voice messaging system for use by cellular telephone customers of GTE. Voicetek entered into the contract here at issue with Pentagram to provide the software to perform the applications desired by GTE. Pentagram claims against Voicetek under theories of breach of contract, quantum meruit and a violation of G.L.c. 93A. Voicetek has moved for summary judgment on the following four grounds: the contract provided a limitations period for instituting claims which bars this action by Pentagram; Pentagram never expected payment for the services for which it now seeks to be paid under its quantum meruit claim; Pentagram is not entitled to payment because the product delivered to Voicetek did not satisfy the basic contract requirements; and, as the product involved is considered “goods” under the Uniform Commercial Code (“UCC”), Pentagram is barred from recovering consequential damages. For the reasons stated below, Voicetek’s motion for summary judgment is allowed only with respect to a limitation of damages under the UCC.
BACKGROUND
Pentagram and Voicetek entered into a Product Development Agreement (“the contract”) on August 2, 1990. Pursuant to the contract and the Statement of Work incorporated therein, Pentagram was to integrate computer software and hardware provided by Voicetek with software to be developed by Pentagram to form a voice message system that would meet the requirements of Voicetek’s contract with GTE. Pentagram was to complete the work in two phases, receiving payments and bonuses from Voicetek after various milestones had been reached in each of the two phases.
Pentagram provided software to Voicetek under both Phase I and Phase II of the contract, including a final delivery which was designed to self-destruct in ten days if Pentagram did not receive payment. Voicetek made several but not all of the payments required under the contract. Voicetek made its last payment to Pentagram on March 18, 1991. Although Voicetek and Pentagram did not have a maintenance agreement, Pentagram performed various maintenance activities related to the product development from October 1990 through May 1991.
DISCUSSION
Summary judgment shall be granted if there are no genuine issues as to any material fact in dispute and if the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Contractual Limitations Period
The contract provision at issue here provides;
13.2. All questions concerning the validity and operation of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts. No action, whether in Contract or Tort, arising out of this Agreement or the services provided hereunder may be brought by either party more than twelve (12) months after the cause of action has occurred, except that an action for nonpayment may be brought within twelve (12) months of the date of the last payment.
Voicetek asserts that the final “except” clause of the above-quoted section bars Pentagram’s claims here because Voicetek’s last payment was made on March 18, 1991 and Pentagram did not file this action until March 31, 1992, more than twelve months later. The Court disagrees. The final “except” clause unambiguously acts to expand the window during which an action for nonpayment may be brought. Such an action may be brought either within twelve months after the cause of action occurred or within twelve months after the date of the last payment. Through the terms “except” and the permissive “may,” the clause serves to broaden, not limit, Pentagram’s rights with respect to bringing an action.
Here, Pentagram makes claims for nonpayment for software and maintenance services. The delivery of software upon which its claims are based was in May 1991, and the maintenance services for which it seeks payments were provided through May 1991. Because Pentagram brought its action on March 31, 1992, within a year of the events in May 1991 which are the basis for its action, Pentagram’s claims are not time barred.
Quantum Meruit
In order for Pentagram to succeed on its quantum meruit claim, it must prove the following three elements: that Pentagram conferred a measurable benefit *321 upon Voicetek; that Voicetek accepted the services with the expectation of compensating Pentagram; and that Pentagram provided the services with the reasonable expectation of receiving compensation from Voicetek. Bolen v. Paragon Plastics, 747 F.Supp. 103, 106-07 (D.Mass. 1990). There remain genuine issues of material fact in regard to this claim.
Voicetek maintains that Pentagram officials have acknowledged both that Pentagram was providing maintenance “as a gesture to Voicetek” and that Voicetek never agreed to pay for maintenance. The materials submitted, however, do not indicate as a matter of law that Pentagram ever agreed to provide the quarter of million dollars’ worth of claimed maintenance services as a free gesture to Voicetek. The parties’ correspondence indicates that during the period when Pentagram rendered the services, a maintenance agreement was being contemplated and discussed by both parties. Furthermore, the issue in this case is not whether Voicetek agreed or expected to pay for the maintenance services, but whether a reasonable person would have expected to pay. Bolen, supra at 107. As there remain genuine issues regarding the elements of Pentagram’s quantum meruit claim, summary judgment on that claim is inappropriate here.
Phase II Payment
Voicetek asserts that it was entitled to withhold payment under Phase II because Pentagram delivered an incomplete product on this phase and because Voicetek informed Pentagram not to proceed on Phase II work until problems with Phase I had been corrected. However, Pentagram claims that the Phase II product it delivered was in full compliance with the contractual specifications and that it offered to cure any defects upon appropriate arrangements for payment. Further, Pentagram submitted evidence that Voicetek repeatedly asked Pentagram to proceed with Phase II while it was still completing Phase I work. The materials submitted do not resolve this dispute as a matter of law. Genuine issues of material fact again remain regarding Voicetek’s payment under Phase II. Thus, summary judgment is again inappropriate.
Consequential Damages
It is undisputed that under the UCC a seller of goods is not entitled to consequential damages. Nobs Chem. U.S.A., Inc. v. Koopers Co., 616 F.2d 212, 216 (5th Cir. 1980). The first issue here, then, is whether the contract between Pentagram and Voicetek is one for the sale of goods under the UCC or whether it is a service contract. The UCC defines “goods” as “all things (including specially manufactured goods) which are movable at the time of identification to the contract. . .” G.L.c. 106, §2-105(1). The contract here called for Pentagram to integrate software and hardware provided by Voicetek with software to be developed by Pentagram to form a voice message system which Voicetek was furnishing to GTE. Systems such as that contracted for by Voicetek and Pentagram are generally termed “turnkey” systems in the computer industry because the system is sold as a package which is ready to function immediately, i.e., the customer merely has to “turn the key.” See USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 117, n.9 (1989). In fact, Voicetek and Pentagram themselves labelled their system a “turnkey” system. See Statement of Work, p.5. Such “turnkey” systems have been held to be goods under the UCC. See USM Corp., supra at 119; Advent Systems v. Unisys Corp., 925 F.2d 670, 676 (3rd Cir. 1991). I, therefore, conclude that the system which Pentagram was obligated to produce under the contract constitutes a good under the UCC.
The consequence of classifying the contract as one for the sale of goods under the UCC is to deny Pentagram the opportunity to recover consequential damages. Direct damages are those that arise naturally from the breach of the contract itself, while consequential damages are those which arise because of the intervention of special circumstances. Chestnut Hill Dev. Corp. v. Otis Elevator Co., 739 F.Supp. 692, 701 (D.Mass. 1990). The issue of whether damages are direct or consequential is a question of law properly determined on summary judgment. Id.
Here, Pentagram makes the following claim for damages:
1. Payments owed $224,925.65
2. Maintenance fees 17,000.00
3. Phase I maintenance 226,046.08
4. Marketing costs in seeking to market this product to other entities 28,763.98
5. Lost marketing opportunity 228,941.25
6. Tandem computer-related marketing opportunity 464,754.31
7. Relocation expenses 18,797.60
8. Insurance surcharge assessed when Pentagram reduced its work force in May, 1991 7,168.00
Plaintiffs Answers to Defendant’s Second Set of Interrogatories, pp. 5-6.
Of the contract-based damages listed above, the only damage claim by Pentagram which flowed naturally from the breach and which can be considered direct as opposed to consequential damages is the $224,925.65 claimed in Item no. 1 as payments owed under the contract. The other damages, including those claimed for marketing costs, lost marketing opportunities, relocation expenses and insurance surcharges, are merely consequential damages and therefore cannot be recovered by Pentagram as a seller of goods under the UCC. However, the damages claimed in item nos. 2 and 3 for maintenance are based upon Pentagram’s quantum meruit claim for maintenance services and are not covered by the UCC. Consequently, Pentagram retains the opportunity to prove at trial a direct contract-based damages claim in the amount of $224,925.65, a quantum meruit claim in *322 the amount of $243,046.08, and its remaining claim under G.L.C. 93A. Voicetek is therefore entitled to summary judgment only with respect to the issue of the limitation of Pentagram’s claim for consequential damages as a seller of goods under the UCC.
ORDER
It is hereby of ORDERED that Voicetek’s motion for summary judgment is ALLOWED only with respect to the issue of limitation of damages; as a seller of goods under the UCC, plaintiff Pentagram’s claims for consequential damages are disallowed. In all other respects, Voicetek’s motion for summary judgment is DENIED.